PIERRE CHALLEFOUX and PETER L. GRIGNON, Appellants.

*vs.*

LOUIS DUCHARME, SUSAN DUCHARME, EPHRIAM SHALER *et ux.*, ABRAM PATTERSON *et ux.*, JOHN L. MONROE *et ux.*, LEVI A. SKINNER, LOUIS C. PATTERSON, FRANCIS DESNOYER, A. H. BAILEY, *et* MARY GRIGNON, respondents.

Where commissioners appointed under the act of Congress of February 21, 1823, to ascertain and decide on the rights of persons claiming lands at Green Bay, Prairie du Chien, &c., have determined the rights of claimants, and their report is confirmed by the act of April 17, 1828, this court will not enter upon an examination of the testimony to ascertain what facts are established by it. The court cannot go behind the decision and report of the commissioners and the confirmation of that report by Congress, and inquire into the sufficiency and nature of the evidence introduced before them.

The commissioners, in hearing and deciding upon the evidence, acted judicially to some extent, and after their determinations were confirmed by Congress, the decision became final and conclusive of the rights of claimants, as to every fact made necessary by the act of Congress, for them to find.

The act of Congress did not seem to confine the benefits of claimants to citizens of the United States alone ; but it would seem an Indian, who had abandoned the savage life, had become a permanent inhabitant, occupied and cultivated the soil, was entitled to take and hold a claim to his land.

Where the commissioners approved two claims to the same land, and Congress confirmed the report, the claimants being otherwise competent, each took a moiety of the tract granted, and they held as tenants in common.

A grant of land from the Government can be made by act of Congress, as well as by patent.

Though the commissioners in reporting on these claims, reported the claim to Susan La Rose in absolute terms, and that of Challefoux, " That it should not conflict with any confirmation previously made by them," it would make no difference, because they had no authority to make such a report, and because the act of Congress granted the land *eo instanti* to both claimants.

The statute of limitations cannot run in favor of one joint tenant against his

co-tenant. The possession of one being the possession of both, unless there
has been an absolute ouster of the co-tenant.

Where the patent of a co-tenant on its face conveys the entirety to the land,
and the patentee conveys to an innocent purchaser without notice of the
other tenant's rights ; such a purchaser will be protected in his title.

An act of Congress granted lands to various persons by referring to a report
of commissioners who had determined their claims, without naming the
persons. The report alluded to is not notice *per se* to the purchaser of an
adverse claimant's right ; but it would be otherwise if they were named in
the act.

Where the co-tenant had sold the half of the tract in severalty to an innocent
purchaser ; the other co-tenant must take from the half unsold, such share
as he may be entitled to receive, upon an equitable settlement between the
co-tenants respectively.

The bill of complaint avers, that by virtue of an act of the
Congress of the United States, entitled " an act to revive and
continue in force certain acts for the adjustment of land claims
in the Territory of Michigan," approved February 21, 1823,
one Pierre Challefoux, on the 17th day of September follow-
ing, made claim to lot numbered twenty-seven, on the plat
of private claims, situate on the west side of Fox river, then
in the township of Green Bay; that in support of said claim
he presented the affidavits of Jean Baptiste Brunette and Jean
Baptiste Broder, stating that on the first day of July, A. D.
1812, the said Challefoux occupied and cultivated said tract;
that upon consideration of the proofs, the commissioners of
the United States, appointed under said act, confirmed said
claim, with the proviso that it should not conflict with any
confirmation theretofore made. The bill further avers, that
said claim did not conflict with any confirmation theretofore
made, but that on the same day said commissioners recom-
mended the same tract for confirmation to the defendant, Susan
Ducharme, then called Susan La Rose; that the claim of said
Susan described the tract by metes and bounds, and not by
the number of the lot; that the only evidence the said Susan
produced in support of her said claim, were the affidavits of

Joseph Roy and Pierre Cousey, stating that said Susan was the grand-daughter of one Augustin Ashwabunay; that on the first day of July, A. D. 1812, the said Ashwabunay occupied and cultivated said tract; that in the year 1815 he died; that previous to his death he verbally bequeathed the same to the said Susan; that since said bequest the said tract has been in her possession and under cultivation; that on the same day claims were recommended for confirmation by said commissioners, to one Therese La Rose and one Therese Rankin, adjacent to said lot 27, each claim embracing about 640 acres of land, and each claim supported by no other evidence than the affidavits of the said Roy and Cousey stating the occupancy of said Augustin Ashwabunay, on the first day of July, 1812; his parol devise to said claimants respectively and his death.

The bill further avers, that no such person as Augustin Ashwabunay ever lived on said land, or in this country; that Susan La Rose was descended from an Ottowa Indian by the name of Ashwabunay—that he never bore any Christian name—that he never was a citizen of the United States, nor paid any allegiance to the laws thereof—that in 1821 the said Susan claimed the same tract of land before the same Commissioners—that in her application she described it as Lot 27 —that she presented the affidavits of the same Roy and Cousey, stating that on the first day of July, 1812, said tract was occupied by "Ashwabunay"—that upon such testimony said claim was rejected by said Commissioners—that in 1823 the proceedings before the Commissioners were ex-parte—that the testimony was taken in Brown county and transmitted to the commissioners in Detroit—that said Susan, by withholding the number of the lot in her description given in 1823, and by affixing the christian name of Augustin to the Indian Ashwabunay, intended to deceive and did deceive said commissioners.

Challefoux et al. vs. Ducharme et al.

The bill further avers a general confirmation by Congress, in 1828 of all claims confirmed or recommended for confirmation by the commissioners, with the proviso that the same should not prejudice the rights of third persons, or extend further than to a relinquishment by the United States of all title to said lands.

The bill avers the death of Pierre Challefoux in 1824, and traces his title to the premises by inheritance and by purchase to the complainants; also that one Louis Dubay occupied the same under a parol demise from said Pierre Challefoux, at the time of his decease, and continued to occupy the same up to 1835, when he died; that subsequently the said Susan married the said Louis Ducharme, and about the year 1837 took possession of the premises and obtained a patent therefor from the United States; that on the 31st day of October, A. D. 1842, they conveyed to the defendant, Ephraim Shaler, the north half of said premises, under whom the other defendants have obtained conveyances to different portions of said north half of said tract—with a description of the several deeds and a reference to the record thereof.

The bill prays that the defendants may answer, that the patent may be delivered to the complainants; that the defendants may severally be decreed to quit-claim the premises to the complainants; that their title may be quieted; and for general relief, &c.

The answer of Ephraim Shaler, says that he is ignorant, and has not been informed, save by plaintiffs' bill, and cannot set forth in his belief or otherwise whether Pierre Challefoux, deceased, did, sometime in September, 1823, or at any other time, claim lot 27, before the commissioners appointed under the act of Congress, approved Feb. 21, 1823; and he is also ignorant, save by complainants' bill what evidence was adduced in support of said claim, or whether said commissioners decided that such claim should be confirmed; but this

Challefoux et al. vs. Ducharme et al.

defendant further says, that if any such claim was made by Pierre Challefoux, deceased, and recommended for confirmation by said commissioners, such claim was made subsequent to the claim of the defendant, Susan Ducharme; was supported by false and fraudulent statements of fact, and interfered and conflicted with the claim previously confirmed to the said defendant Susan, and was recommended as aforesaid by the commissioners with the express proviso that it should not interfere with any claim previously confirmed.

That he is informed and believes the confirmation of the claim of defendant, Susan, bears date the 1st of Nov., 1823, and that the evidence given in favor of said claim consisted of the affidavits of Pierre Cousey and Joseph Roy, and also by the affidavit of John Lawe, all of whom were highly respectable citizens of Green Bay, and who resided there continually from the year 1800 up to the time when said affidavits were made in 1823; that they were all intelligent and disinterested persons, who must have been well and familiarly acquainted with the facts and circumstances of which they bore testimony.

Admits that there were two other tracts confirmed, to Therese Rankin and Therese La Rose respectively, containing each about one section of land, but whether supported by any or what testimony, this defendant is not informed; but this defendant insists that it is entirely immaterial to the issue in this case, whether the said claim of Therese La Rose and Rankin were confirmed or not, or upon what facts and circumstances they were confirmed, or whether the two claims of the persons above named and the defendant Susan did in the aggregate contain a quantity of land equal to nineteen hundred and twenty acres, as there is nothing in the laws of Congress or in the rules of adjudication adopted by the Commissioners, prohibiting claimants from being confirmed in as many tracts as had been occupied and cultivated by them, or by the persons under whom they claimed title.

That he is informed and believes that there was a person residing at Green Bay by the name of Ashwabunay, who occupied the said private claim 27; that he was of Ottawa blood ; that he was reared in the habits of the mixed blood inhabitants; that he was not a member of any tribe of Indians, but was wholly separated from the Ottawas, with whom he claimed relationship ; that he was called Augustin by his neighbors and associates; that he was always regarded as a native born citizen of the country, and paid the same allegiance to the laws of the United States which was paid by other citizens of the country.

Admits that Susan put in her claim to said tract 27 in 1821, before the said Commissioners, and adduced the testimony of two witnesses, Cousey and Roy, in support of her said claim, and that said claim was not allowed; but this defendant insists that there is no material variation between the statements made by said witnesses in 1821; and those upon which the claim of said defendant Susan was confirmed in 1823; and that the reason why said claim was not confirmed in 1821, he is informed and believes was because the said defendant Susan did not prove possession in her ancestor from 1796 to 1807, as by the then existing laws was necessary to authorize a confirmation by the Commissioners. And, further, he admits that the testimony taken in 1823 was *ex parte*, as he is informed and believes, and was taken in Brown county and adjudicated upon in Detroit, in the State of Michigan; but this defendant will insist that the said Commissioners were authorized to take and did take into their consideration the testimony furnished them in 1821, and that the testimony then taken was taken by an agent of the Commissioners publicly at Green Bay, after public notice to all the citizens of said place.

Admits that Pierre Challefoux died in or about the year 1824; but this defendant, upon information and belief, denies

that the said Pierre Challefoux left any legitimate children at his decease as his heirs at law; and will insist that Pierre, Mary and Charlotte, were the bastard children of the said Pierre Challefoux, begotten of an uncivilized Chippewa squaw.

Denies, upon information and belief, that Louis Dubay ever occupied any portion of said private claim 27 under the said Pierre · Challefoux, or in any other manner, except as the tenant at sufferance of the defendant Susan.

Denies, upon information and belief, that Mary Challefoux was ever married to Jean Baptiste Grignon, but admits that said Mary died in or about the year 1845, and that Mary Grignon is her only surviving child and heir.

Says that he is ignorant and not informed, save, &c., and cannot set forth, &c., whether Charlotte has been heard of since 1823.

Says, on information, &c., that Louis and Susan were married in 1844, but is not informed, &c., save, &c., and cannot set forth, &c., whether the said Dubay was then dead or has since died.

Says that on the 5th of Nov., 1829, the President of the United States issued to the defendant Susan, by her maiden name, a patent, whereby the United States granted to her, and her heirs and assigns forever, the said tract of land No. 27, and that said Susan was seized in fee simple thereof. Further says, that on the 31st day of October, 1842, the defendant Susan sold and conveyed to this defendant, by deed, &c., the `North half of the said tract No. 27, &c.; that the consideration for said deed was the sum of $500, which sum was paid by this defendant to the said Susan therefor. And that this defendant never had any notice of the claim of Pierre Challefoux, or of any other person claiming under him, at the time of such conveyance or at any other prior or subsequent time, until the filing of complainants' bill. And

this defendant insists upon these facts, and claims the same benefit as if he had pleaded the same.

Says that under and by virtue of the said conveyance, he entered into possession of the north half of said premises, and continued to hold and possess the same, and made large and valuable improvement thereon, until the 31st day of January, 1849, when this defendant conveyed a portion of said premises to Josephine B. Patterson, and the remainder thereof to Oliver W. Shaler; that said improvements consisted of clearing, fencing, and erecting buildings on said premises, and have cost this defendant in the aggregate the sum of $1,000 at least.

Says that he believes said improvements were made by him with the knowledge of the said complainants, and of Mary Challefoux aforesaid, and of Mary Grignon, one of the defendants, and that they well knew at the time he was negotiating for the purchase of said premises his intention of purchasing, and when said negotiation was completed, and the deed aforesaid executed to him by said Susan.

Says he is informed and believes that Susan is a descendant of said Augustin Ashwabunay; says that he is informed and believes that by virtue of the occupancy of the said Ashwabunay, and of the confirmation and patent hereinbefore referred to, the said Susan continued to claim and hold the said tract of land, as of a good and perfect and absolute estate in fee simple, and under such claim of title was in actual possession, adverse to the said complainants, and those under whom they claim, until she conveyed the north half of said premises to this defendant, as hereinbefore set forth.

Says that under the conveyance hereinbefore mentioned he had ever since the date of the said deed claimed the said premises in fee simple, and had been in the actual possession of the same so conveyed to him, adverse to the said complainants, and those under whom they claim, until he conveyed

the same to Josephine B. Patterson and O. W. Shaler, as aforesaid, which adverse possession of the said defendant Susan Ducharme and this defendant, has continued for more than twenty years preceding the execution of said deeds to Josephine and Oliver, and the filing of the complainants' bill. And this defendant will insist upon such adverse possession, &c.

The answers of Susan and Louis Ducharme, Emma C. Shaler, Abram C. Patterson & ux., John L. Monroe & ux., and Francis Desnoyers, are substantially like the answer of E. Shaler, and therefore are not abstracted. The bill was taken as confessed as to the other defendants.

The case was subsequently removed to the county of Dodge for hearing, by reason of the counsel having been elected judge of the circuit court in Brown county. Upon the hearing the bill of complaint was dismissed; from which decree this appeal was taken. The facts proved are sufficiently stated in the opinion of the court.

*Howe & Haynes,* for the appellants.

1. By the act of Congress of February 21st, 1823, the equitable title to the lands upon Fox River was vested in those and the representatives of those who occupied them on the 1st day of July, 1812, and continued friendly to the United States government thereafter.

2. That those only who were citizens of the United States on the 1st of July 1812, could receive any benefit from that act. Consequently Indians could neither receive nor transmit any rights under the same.

3. It was the duty of the commissioners under that act to receive and report the evidence (to wit, of occupation and of friendly relations), in favor of each claim.

4. The commissioners being the only tribunal authorized to examine into the validity of the respective claims preferred,

no evidence can now be received merely contradictory of the proofs received by them; but the proofs received by them may be impeached, by showing frauds and by evidence of any extrinsic fact, which was not passed upon by the commissioners, and which would invalidate the claim.

5. The proceedings before the commissioners having been ex parte, they will not be deemed to have passed upon any *fact* which was not distinctly presented to them in evidence, which the citizenship of the said Augustin Ashwabunay was not.

6. The Congress of the United States is the best interpreter of its own acts; and it appears, from their uniform course in such cases, that it regarded the conclusions of the commissioners in the light of recommendations merely, and not as final adjudications. Thus Congress, by the act of 1823, *confirmed* the claims *recommended* by the *commissioners* under the act of 1820; and by the act of 1828, Congress *confirmed* the claims *recommended* under the act of 1823.

7. Taking this to be the true scope of the authority granted to the commissioners, the act of 1823, so far as it bears upon or relates to the tract in question, will be best rendered thus: "We hereby grant private claim No. 27 to whomsoever was in actual occupation thereof on the 1st day of July, 1812, provided he was a citizen of the United States and continued friendly to the government thereof; *and we appoint* A. B and C. *commissioners* to inquire and report who that person was, reserving to ourselves the right to pass upon the sufficiency of the proofs received. And pursuing the same rule of interpretation, the act of 1828 will be rendered as follows: "We adopt the report made by the commissioners in relation to private claim No. 27. We admit the sufficiency of the proofs therein adduced, and we quit claim said tract to the parties therein recommended."

The act itself contains only the operative words of the grant,

referring to the report for a description of the grantee and of the thing granted; and upon turning to the report, we find both complainant and Susan La Rose named as grantees. If, then, we incorporate so much of the report as bears upon this tract into the act of 1828, and recite the substance of the act of 1823 by way of preamble, we shall read as follows:

Whereas, by act of Congress of February 21st, 1823, it was enacted that private claim 27 should be ceeded to whomsoever should prove, to our satisfaction, that he was in actual occupation of the same on the 1st day of July, 1812, provided he was a citizen of the United States and continued friendly to the government thereof: Now therefore, in consideration that it is proved, to our satisfaction, that both Augustin Ashwabunay and Pierre Challefoux were in the occupation thereof on that day, and that they continued friendly to our government, and that the said Augustin Ashwabunay devised his interest to Susan La Rose, (presuming as we do that both were citizens of the United States,) said claim is hereby quit claimed to the said Pierre and Susan.

8. Now this grant is capable of but four different interpretations. It must either, 1, be declared inoperative as to private claim 27, by reason of uncertainty, or otherwise; or, 2, it must be held to enure to the benefit of Susan, to the exclusion of Challefoux; or, 3, it must enure to the benefit of Pierre, to the exclusion of Susan; or, 4, both must take under it as tenants in common.

9. For the 1st construction, no one contends. It is unnecessary, and so will not be adopted by the court, for this, like all other grants, will be construed so as to give effect to it, if possible.

For the 2d construction the *defendants* contend—but for what reason? Challefoux is equally capable of taking, and the proofs and the presumptions are quite as strong in his favor, to say the least. If it is objected that the recommen-

dation in favor of Challefoux was not absolute, but was declared to be subject to any prior confirmation of the tract, we answer there was no prior confirmation. The recommendation to Susan was not a prior confirmation; for, 1st—it was not prior in point of time, but appears to have been *eadem temporis;* 2d—if prior in point of time, it was not a *confirmation,* Congress did not so regard it, as we have already shown, and that the commissioners did not so regard it, will appear from their own report; and 3—if prior in point of time, and if it is to be regarded in the nature of a confirmation, still it is void, because founded upon the gift of one incapable of taking or transmitting a right under the law. So there is no reason why Susan should take under the act, to the exclusion of Challefoux.

For the 3d construction we contend. Because some one *must* take under the grant, and Susan *cannot.* But if the 3d construction be not the true one, the 4th must be; for if Pierre does not take to the exclusion of Susan, he must take jointly with her. And if Susan be *capable of acquiring* title at all under the devise of an Indian settler, then the act presents the ordinary case of a grant of one single piece of property to two competent persons, in which case each takes an undivided moiety, and they become tenants in common. That title passed to the occupant, under the act of February 21, 1823, and that we are only to look at the report of the commissioners, and the act of confirmation of 1828, in order to ascertain who was the occupant, we cite, *Varet Adm'r vs. N. Y. Ins. Co.,* 7th Paige 560 ; *Delafield vs. Colden,* 1 Paige 139 ; *Comegys vs. Vasse,* 1 *Pet.* 193.

That marriage at common law is regarded simply in the light of a civil contract, see 2d Kent's Comm., 87 ; *Dalrymple vs. Dalrymple,* 2 Hazzard's Consistorial, R. 54, 64 ; *Fenton vs. Reed,* 4 J. R. 52.

*S. R. Cotton & Chas. Billinghurst,* for the respondent.

1. Congress vested in the commissioners the power to *decide* these claims, and Congress *confirmed* Susan Ducharme's claim to tract No. 27, and a Patent was issued to her, Nov. 5th, 1829. Story's Laws U. S., 2d vol., p. 1057, 1098, 1232; 3d vol., p. 1645, 1780, and 1878, and the act of Congress to confirm certain claims to lands in the territory of Michigan, approved April 7, 1828.

2. The decision of the register and receiver, and of commissioners appointed to adjust land claims, is *judicial* not *ministerial;* and will hold good until appealed from. *Bennet vs. Farrar,* 2 Gilman's Rep., 598; 1 Peter's, 340, 666–8; 2 Pub. Land Laws, 85, 92–3–9, 140, 214.

3. The claim of Susan is *proven* to have been *first* made and *confirmed.* The bill calls for answer on oath, and the answers allege this, and they are not disproved by two witnesses, or one witness and corroborating circumstances. Story's Eq. Juris., 1528. The confirmation to Susan is *absolute.* 4 Am. State Papers, 703, 862; also see Patent. The confirmation to Challefoux is conditional; Id. 713.

4. The bill charges that there was no other proof to support the claim of Susan before the commissioners, than Roy and Cousey. The answers deny this, and state that John Lawe's testimony was additional. This is not disproved by the complainants. 4 Am. State Papers, 704.

5. The benefits of the laws of Congress were not confined to *citizens* of the U. S., but extended to *" every person"* who could prove that he occupied and cultivated a claim in July, 1812, and who *"submitted* to the authority of the United States."  In other words, those who were in open *rebellion* or *resisted* the laws of the United States, should not have the benefit.  But a peaceable *alien,* or a half breed, or an Indian, was a *"* person" under the law, and entitled to take land upon making proof.  The term *citizen* or *allegiance* is not in the law.

6. A conveyance of wild and vacant lands gives a constructive *seizen* thereof to the grantee, and gives all the remedies incident to the estate. *A fortiori*, it applies to a patent, since at common law a patent imports a livery in law. 3 Pet. Cond. Rep., 177; 8 Cranch, 229 to 251; Rev. Stat., 642, § 7, sub div. 3; Story's Eq. Pl., § 811; 5 Leigh 389.

7. A court of equity will refuse to interfere where there has been gross *laches* in prosecuting rights, or long and unreasonable acquiescence in the assertion of adverse rights. 1 McLean's Rep., 97; 2 Sto. Eq. Juris., 1520, and cases cited in note 3. Nothing can call the court into activity but *conscience*, *good faith*, and *reasonable diligence*. Idem, 983.

8. The statute of limitations applies equally to courts of equity with courts of law; and more than twenty-one years had elapsed after patent issued and before suit brought. The patent issued Nov. 5, 1829; the suit was commenced April 9, 1851. *Mitchell vs. Thompson*, 1 McLean, 103; 1 Sto. Eq. Juris., § 64 and 529; 2 id. §·1520; R. S. chap. 127, § 27.

The rule of equity is, that the cause of action arises as soon as the party has a right to apply to the court. 2 Sto. Eq. Juris., § 1521, a, p. 989. To take the case out of this rule, the complainants *argue* that the fraud was not discovered until *recently*. There is no allegation of this *late* discovery in their bill, nor is there any proof on the subject. If the proof shows anything on the subject, it shows enough to warrant the court in *presuming* that they knew the fraud in the day of it, as well as now; for Geo. Fortier, one of their witnesses, is the brother-in-law of the complainant Challefoux, and the two Grignons are the brothers of the other complainant. Besides, the parties complainants now live and have always lived in the neighborhood of the land in dispute, and must have known it if there had been any fraud.

9. The defendant Shaler and his grantees purchased for a valuable consideration, and without notice, and will be pro-

tected.   2 Sto. Eq. Juris., § 1503; Fonblanque Eq., 412.

10. Where there is equal equity the law must prevail, 1 Sto. Eq. Juris., S. 64, c, page 74.   And at law the patent is conclusive evidence of title, Burnett's Rep., Wis. 13; *The People vs. Mauran*, 5 Denio, 389; 13 Peters, 436–450; 6 Cow., 281.

11. Shaler purchased for a valuable consideration, and having made improvements, with knowledge of complainants, such improvements *create* an *equity*, 1 Sto. Eq., § 851.

12. If Ashwabunay *was* an *Indian*, the grant by act of Congress to him would have been good, for a *patent* to him would be good.   20 John. R., 706; 5 Cow., 397, 505; 7 Wend., 367.

13. It is claimed by the complainants that Ashwabunay was an *Indian*, and did not *cultivate* the land.   The proof shows that he did cultivate it.   On the other hand there is no proof that Challefoux cultivated the land in July, 1812. Ashwabunay, if of Indian origin, is shown to be separated from his tribe, and to live as the other settlers about Green Bay lived in those days, by raising corn and potatoes, hunting and fishing, and sometimes as a *voyageur*.

14. The declarations of a *tenant* must be *against* his interest, to be admitted as evidence for his landlord, or those claiming under him, 1 Ph. Ev., 258, and cases there cited. The admissions of Dubay, that he was holding the claim for Challefoux cannot be received, because coupled with the *further admission* that "he was to have a portion of the land," hence he was interested in the admission or declaration.   But when he admits that he is the tenant of *Susan* and there by Frank's permission it is against his interest, for he makes himself liable for rent.

15. The laws of Congress do not limit a person to *one* claim.   "No person shall be confirmed in any *one claim*, that shall exceed 640 acres."   A. may make a claim for himself;

B. and C. may employ him to make and hold claims for them —thus A. who is only one person, may act in three capacities. A father may claim and occupy for his children 640 acres for each. The law would not prohibit it. Such, we understand, is the practical working of the law; the interpretation given to it by the department.

16. The complainant, *Peter L. Grignon,* has no equity. A court of equity will not sanction his purchase of a *stale* claim, for the purpose of litigation. There certainly was no fraud practiced upon him. Sto. Eq. Jur., § 1048, note 2, *et seq.*

*By the Court,* Cole, J. A tribunal was instituted by an act of Congress, approved February 21st, 1823, constituting a board of commmissioners for the purpose of " ascertaining and deciding on the rights of persons claiming lands at Green Bay, Prairie du Chien, and the county of Michilimackinaw." The powers and duties of the commissioners as defined by the act were, to ascertain and *decide* on the rights of persons claiming land in those. districts, and transmit their report, containing transcripts of their decisions to the Secretary of the Treasury, to be laid before Congress. The 5th section of the act designates who might be claimants, in the following language :

" That every person who, on the first day of July, one thousand eight hundred and twelve, was a resident of Green Bay, Prairie du Chien, or within the county of Michilimack-inaw, and who on the said day occupied and cultivated, or occupied a tract of land, which had previously been cultivated by said occupant, lying within either of said settlements, and who has continued to submit to the authority of the United States, or the legal representatives of every such person, shall be confirmed in the tract so occupied and cultivated," &c.

Pierre Challefoux, the father of the complainant Challefoux, and from whom the complainants claim title, filed before the commissioners, pursuant to the act, a claim to lot No. 27, at Green Bay, and proved by two witnesses, Baptiste Brunette and Jean Baptiste Broder, that he occupied and cultivated the tract on the 1st of July, A. D. 1812, and had submitted to the authority of the United States.

The defendant Susan La Rose or Susan Ducharme, from whom all the defendants claim title as purchasers, (except Mary Grignon, who is a nominal party), also claimed the same tract before the commissioners, as grand-daughter and heir of Augustin Ashwabunay. She proved likewise by two witnesses, Pierre Cousey and Joseph Roy, that Ashwabunay occupied and cultivated the land on the 1st of July, 1812, and submitted to the authority of the United States.

The commissioners decided in favor of both claims, and confirmed them, and in their report recommend both for confirmation. Congress, by an act approved April 17, 1828, confirm "the claims purporting to be confirmed or recommended for confirmation by the commissioners." A patent for the land was issued to Susan La Rose on the 5th of November, 1829. Susan went into actual possession of the land some fifteen years ago, or more; the exact time when she went into possession does not very clearly appear, neither is it material in the disposition of the cause. On the 31st of October, 1842, Susan La Rose sold and conveyed the north half of the tract to Ephriam Shaler, and the other defendants derive title through this purchase. The complainants file their bill, praying that this patent issued to Susan La Rose may be delivered up to them, and that the defendants be decreed to quitclaim their interest in the premises. And the position upon which the complainants' rely to sustain. their cause, is that it is proved that Ashwabunay was an Indian and therefore that he could not receive or transmit

any right under the act of 1823, and that the title under the grant and patent enured to the benefit of their ancestor Pierre Challefoux, senior. Considerable testimony has been taken to establish the fact that Ashwabunay was an Indian, and also to show that Challefoux, senior, did not occupy and cultivate the land on the 1st of July, 1812. The view however which we have taken of the case relieves us from the necessity of entering upon an examination of the testimony to ascertain what facts are, or are not, established by it, for we are of the opinion that we cannot go behind the decision and report of the commissioners and the confirmation of that report by Congress, and inquire into the sufficiency and nature of the evidence introduced before them.

Congress, well aware of the condition of the country and the nature of these claims, saw fit to establish these boards of commissioners to examine into and *decide* upon the rights of the claimants. Reasons of sound policy have led to the establishment of these boards of commissioners, to settle claims to land from time to time, and courts have uniformly approved of the laws, and sustained the acts of the commissioners, when acting within the scope of their authority. 12 Wheat., 520–601; 6 Peters, 763; 7 id., 51; 12 id., 410; 2 How., 344. Notwithstanding the act of 1823 (or more properly the acts of March 3d, 1807, April 23d, 1812, and May 11th, 1820, all of which have to be looked into in determining the powers and duties of the commissioners) empowered the commissioners to *decide* upon the rights of the claimants, yet their decisions were not final until approved by Congress. The primary object for which the board of commissioners was appointed, seems to have been to examine into and report to Congress such claims as ought to be confirmed. In the discharge of this duty, they had, to a certain extent, to act judicially upon evidence and facts tried before them. They were to decide whether a claim was supported by competent evidence under

Challefoux et al. vs. Ducharme et al.

the law, and this decision, when approved and confirmed by Congress, we think, must be considered final and conclusive.

It is admitted by the counsel for the complainants, that the decision of the commissioners upon any fact, as for instance, whether a claimant occupied and cultivated his claim on the 1st of July, 1812, or not, must be considered conclusive, and that no evidence can be now received contradictory of the proofs made before them. But he insists that their decision is not conclusive upon the question as to whether a person was competent to take under the law or not. In other words, that we may inquire into the question as to whether Ashwabunay was an Indian, but cannot, as to whether Challefoux occupied and cultivated the land on the 1st of July, 1812. We are unable to make a distinction between the cases; we think that if we are permitted to go back of the decision of the commissioners, and the confirmation of that decision by Congress, and inquire into the question of the citizenship of a claimant, we may upon the same principle inquire into any other fact passed upon by the commissioners. It is not by any means clear that Congress intended to confine the benefits of the act to citizens of the United States. The language of the law is very comprehensive "that every person who resided at Green Bay, &c., and occupied and cultivated his claim, on the first day of July, 1812, and submitted to the authority of the United States, might be a claimant for six hundred and forty acres." There might perhaps have been some Indians, abandoning the wild and savage life of their people, who had become permanent inhabitants, occupying and cultivating the soil, submitting to the authority of the United States, and who would have been entitled to take claim under the liberal provisions of this act.

However, it is not necessary for us to decide whether Congress did or did not intend to discriminate in this respect; we must consider the decision of the commissioners upon a claim

as correctly made upon good and sufficient evidence. It seems that any other rule would at once disturb and throw open to litigation those old claims, that Congress has been so sedulous in quieting and forever putting at rest. Considering, then, the decision of the commissioners, and the confirmation of that decision by Congress as conclusive of the rights of the parties, how then does this case stand? Challefoux and La Rose make a claim to the same tract of land, their claims are both confirmed by the commissioners and recommended for confirmation in their report; Congress acting upon their report, also confirms the claim; in other words, grants the land to two persons equally competent to take under the grant; for it has been held, that a grant may be made by a law as well as by a patent, pursuant to law, and that a confirmation by law is as fully, to all intents and purposes, a grant, as if it contained in terms a grant *de novo*, 12 Peters, 454; 2 Howard, 372. Such being the case, Challefoux and La Rose took an undivided moiety of the land as tenants in common.

It was contended that the confirmation of Challefoux's claim by the commissioners was conditional, " that it should not conflict with any confirmation previously made by them," while the confirmation of Susan's claim was absolute, and in point of time, prior to Challefoux's. There are several answers to be given to this argument, besides stating that it assumes, as proved, a controverted fact. The commissioners had no power to grant title to the land; that was an act of sovereign power, and could only be done by Congress by general or special legislation. The grant was made by Congress *eo instanti* to both Challefoux and La Rose; that disposes of the objection. It might properly be observed that the commissioners frequently qualified their confirmation as in this case, and that even, if it were admitted that a confirmation of a claim by the commissioners, would, under the act of Congress, pass the title, yet that Susan La Rose cannot

draw an inference from that circumstance, favorable to her rights, without showing that her claim had been previously confirmed; but this it is impossible to do. In the report made by the commissioners, her claim comes first in order; her claim, that of Challefoux, and a great number of others, purport to have been examined and confirmed the same day, but it is unreasonable to suppose that they were all acted upon and confirmed on that day; the position of a claim in the report is accidental merely, and will not warrant a conclusion from it one way or the other.

Several other objections have been raised against the complainants' right to relief, which will be summarily disposed of.

It was insisted that the complainants were barred of their right of action by the statute of limitations, or by the adverse possession of the premises by Susan La Rose for twenty years before the filing of the bill.

According to our view of the case, Challefoux, senior, and Susan La Rose, took the land under the act of Congress as tenants in common, and the title under the grant of the patent enured to their common benefit. In that case the possession of Susan La Rose, one of the tenants in common, is the possession of the other. 4 Kent. Com., 370; Adams on Eject., 55. It is true that one tenant in common may oust his cotenant and hold in severalty, but a silent possession accompanied with no act which can amount to an ouster, will not be construed into an adverse possession. *McClung vs. Ross*, 5 Wheat., 124. It does not appear from the evidence that Susan La Rose took actual possession of the premises, claiming to hold them by the patent covering the whole tract, for twenty years, before the bill was filed. So that we do not think that the complainants have been guilty of such gross laches in asserting their rights as to be barred by loss of time.

But they must be content with the measure of relief which this court upon equitable principles is able to give. We can-

not grant a decree against Ephraim Shaler, or any purchaser under him ; he purchased the north half of the tract in 1842; he has set up in his answer that he was an innocent purchaser for valuable consideration, without notice of complainants' rights ; he must prevail upon this defence.

At the time he purchased, his grantor had actual possession of the land ; the evidence of her title was the patent issued to her by the government of the United States, embracing the whole tract. It does not appear that he had any knowledge whatever of the report of the commissioners, and that report was not notice *per se,* to him of the complaints' rights.

The act of Congress confirmed the claims contained in volumes one, three, six, eight and nine of the reports. Had the acts of Congress contained or designated the names of the claimants, it might have been plausibly argued that it would have been noticed. But it is necessary to refer to the report to ascertain the names of the claimants, and the act *is* unintelligible without this report.

Under such circumstances we are unable to hold that the report of the commissioners or act of Congress, was either constructive or actual notice to the defendant Shaler and his grantees. They entered into possession of their land with a feeling of security which the possession of Susan La Rose and the patent in her name, were well calculated to inspire. They have or some of them have, made valuable improvements, and they ought now to be protected in their title.

The complainants must therefore take the south half of the tract, covered by the patent as their moiety of the premises, relinquishing all claim to the north half which has been conveyed to Shaler.

*On the motion for rehearing. By the Court,* COLE, J. This cause came before this court at the June term, 1855, upon

the appeal from the decree of the circuit court dismissing the complainants' bill for want of equity. On an examination of the case, and of the points raised and discussed by counsel, we were led to the conclusion that the bill had been improperly dismissed; at least as to the defendants, Ducharme. The decree of the circuit court was therefore reversed, and the cause remanded for further proceedings.

At the last term a motion was made for a rehearing of the cause; and in support of this motion several questions were discussed which were not alluded to on the former argument, to show that the court had misapprehended the case. But we think that this motion must be denied, as we are still of the opinion that the complainants have rights in the premises not conveyed to Shaler; though they may not, perhaps, be equitably entitled to the entire south half of the lot as intimated in the opinion on file. It has been suggested by the counsel who argued in favor of a rehearing that the defendants, Ducharme, might have been, and probably were, to considerable expense in paying taxes and assessments upon the common property before the sale, of a part of it, to Shaler; and that they had made valuable improvements upon the south half of the lot, which greatly enhanced its value; and that it would be inequitable and unjust to decree it to the complainants without making compensation for such improvements. Neither by the pleadings, or argument, when the case was upon hearing was our attention called to these claims of the defendants Ducharme, and of course they were not considered by us in disposing of the case. It is possible that such claims exist, and that from the oversight of counsel, they were not set up and inserted in the answers. And it may be permissible at this stage of the cause, for the circuit court to allow an amendment of the pleadings so that they might come in; though we express no opinion upon the point of practice. In deciding this motion we wish merely to

qualify and limit any expressions in the opinion of the court, which would seem to give the south half of the lot absolutely to the complainants, to the prejudice of these claims of the defendants, Ducharme, if they exist; and if their answers now are, or can be so amended as to enable them to assert them.