## LAFLIN *v.* CHICAGO, W. & N. RY. Co.[1]

*(Circuit Court, E. D. Wisconsin.* December 10, 1887.)

**1. EMINENT DOMAIN—DAMAGES—EVIDENCE.**

In proceedings to recover damages for the construction of a railroad across premises used as a summer resort, plaintiff having shown by keepers of similar resorts that the proximity of the road would in their opinion impair the business of the hotel, defendant offered to prove by witnesses who kept hotels near the tracks and depot grounds of other railroads that such hotels were not injuriously affected thereby. *Held,* that the testimony was irrelevant.

**2. ABATEMENT AND REVIVAL—AGREEMENT TO ARBITRATE.**

A mere executory agreement to arbitrate entered into by parties to a proceeding to recover damages to land resulting from the construction of a railroad, does not abate the suit, or work a discontinuance, where no submission has been actually made, and no arbitrators actually chosen; and this is especially so where the party setting up the agreement as a bar has gone to trial without objection upon the merits.

At Law.

This was a proceeding for ascertaining the damage to certain premises situated in Waukesha, Wis., owned by the plaintiff, and alleged to have been injured by the construction of the defendant's road across the same. Connected with said premises was a hotel, kept by the plaintiff for the accommodation of summer guests, known as the "Fountain House," with its appurtenances; which included a mineral spring, and pleasure grounds, and drives for the use of guests. On the trial the plaintiff called witnesses engaged in the summer hotel business at other points and places, to testify whether, in their opinion, based upon their experience in such business, the construction and proximity of the defendant's railroad would have an injurious effect upon the business and patronage of the Fountain House. In reply to this testimony the defendant called witnesses who were engaged in the business of conducting and managing hotels situated near the tracks and depot grounds of other railroads; and it was sought to show by such witnesses that the proximity of their hotels to railroads had no injurious effect upon the business of such hotels. It was admitted by counsel for the defendant that it was not intended to call for the opinions of such witnesses in relation to the probable effect of the construction of the defendant's railroad upon the business of the Fountain House; the object of the defendant being simply to show that the hotels kept by the witnesses in other places were not injured by their proximity to railroads. This testimony was objected to by counsel for the plaintiff, as inadmissible, on the ground that the tendency and effect of it would be to introduce into the case collateral issues not pertinent to the issue here to be tried, which related solely to the effect upon the Fountain House of the construction of the defendant's railway. The defendant introduced in evidence an agreement entered into by the parties subsequent to the commencement of the suit,

[1] See 33 Fed. Rep. 415.

to arbitrate their differences; and it was contended by counsel for the defendant that this agreement of arbitration operated to discontinue or abate this suit.

*D. H. Sumner* and *J. V. Quarles*, for plaintiff.

*J. G. Flanders, Hugh Ryan, D. S. Wegg,* and *Howard Morris,* for defendant.

DYER, J., (*after stating the facts as above.*) When the plaintiff was making his case he offered the testimony of several witnesses to show what effect, in their judgment, the construction and proximity of the railroad would or might have upon the business and patronage of the Fountain House. The witnesses were shown to have been long acquainted and experienced in the business of keeping summer hotels, supported by a class of patrons similar to those which the testimony tends to show are received as guests at the Fountain House, and appeared to be qualified to speak upon the subject to which their examination related. The testimony referred to, was, of course, offered as bearing, in its ultimate effect, upon the question of the value of the property for summer hotel purposes after the railroad was built across the plaintiff's land. The admission of this testimony was contested with much force by counsel for the defendant, but the court was unable to see why, within the doctrine of the cases on the subject decided by the supreme court of this state, it was not admissible. The only doubt I had was whether the matter inquired about was the proper subject of expert testimony. There may be doubt upon that point, but so much has the law in relation to the competency of such testimony, as applied to various subjects, been extended, or its scope broadened, by modern authority, that it seemed to me when the question came up that the doubt ought to be resolved in favor of the admission of the testimony. I have given a good deal of thought to the question since, because, if satisfied that the testimony was improperly admitted, I would not hesitate to strike it out before submitting the case to the jury; this being held to be proper practice, and to cure the error of original admission of improper testimony, by the supreme court of the United States. But, after careful reflection, my conviction still is, the testimony was admissible.

Now, the defendant offers the testimony of witnesses,—gentlemen engaged in the summer hotel business, and understood to be experienced in that business,—by which it is sought to show that they have kept hotels in even nearer proximity to railroads than is the Fountain House to the defendant's road, and that the business of such hotels has not been injuriously affected by that fact. The question is, is this testimony admissible? It is not proposed to show this merely as establishing the experience of the witnesses in the summer hotel business, and then to follow it with an expression of opinion from the witnesses as to whether the business of the Fountain House is likely to be diminished by the construction of the defendant's railroad. This is frankly admitted. But the object of the proposed testimony is simply to show that the business of other summer hotels is not injured by their proximity to a railroad.

Clearly, this would be introducing into the case what might prove to be a new and independent issue, foreign to that we have to try, namely, an issue in relation to the business, situation, and surroundings of other hotels, and all the various circumstances under which business is transacted in them.   There are exceptional instances where this is allowable, such as cases involving matters of science, art, or questions of professional skill.   But the cases are rare which allow independent collateral facts to be drawn into the issue.   The question is, is the fact sought to be proved, namely, the effect of the construction of a railroad upon other hotels, a fact relevant to the issue, which is one involving the Fountain House?   I think it is not.   If the evidence proposed to be introduced is admitted, it must be that the plaintiff would have the right to rebut it, and then the defendant might have the right to reply to the testimony in rebuttal, and thus we should be engaged in a trial of the question as to other hotels, an independent collateral fact not germane to the principal issue we are trying.   It is the duty of the court to allow the defendant to do in support of its contention just what it has allowed the plaintiff to do in support of his theory of the case, that is, to call witnesses who may show themselves qualified to speak on the subject from experience in the summer hotel business; to give to the jury their opinion and judgment as to whether the construction of this railroad will injuriously affect the patronage and business of the Fountain House. This the defendant has the right to do, and such testimony will be admitted.   But to testimony offered only to show the effect of the construction or proximity or operation of a railroad upon other hotels, the objection must be sustained.

I do not think there is any issue of fact arising upon the arbitration agreement for the court to submit to the jury.   So far as the agreement cuts any figure in the case, the effect which it shall have is purely a question of law.   There is no dispute that the parties entered into this agreement; nor can it be disputed that by mutual forbearance the time for the selection of arbitrators under the agreement was extended.   There were, for a considerable time, continued negotiations between the parties, with reference to the contemplated arbitration and the selection of arbitrators; and it must be held that by mutual consent the time for making such selection and entering upon the arbitration was extended.   There is no evidence in the case that either party, by express notice to the other, before this case was noticed for trial, revoked the arbitration agreement. Therefore, I think the whole question resolves itself into the point whether the court, as matter of law, should hold that the execution of the arbitration agreement operated to abate the present action, or as a bar to its further prosecution.

It is contended by counsel for the defendant that the execution of this agreement, which has been aptly characterized as a purely executory agreement, worked a discontinuance of this suit.   The material provisions of the arbitration agreement are as follows:

"*First.* The first party hereto, [Laflin,] and D. S. Wegg, general solicitor of said second party, shall jointly on the 1st day of July after the execution

of this agreement, nominate three arbitrators. *Second.* All three of said arbitrators shall be competent, disinterested persons, residents of said county of Waukesha. *Third.* Said arbitrators shall meet at a time and place in said Waukesha county to be selected by themselves; ten days' notice in writing having been previously given to each of the parties hereto of the time and place of said meeting, said time, however, to be prior to July 1, 1887, and may adjourn from time to time until the hearing of the matter submitted to them is concluded. *Fourth.* It is hereby mutually agreed that the only question to be submitted to such arbitrators is as to the amount of money which said first party is entitled to receive, and said second party shall be bound to pay to said first party, for and as compensation for the taking by said second party of said strip, belt, or parcel of land described in said award, and for the damages occasioned by the taking thereof, and that such compensation and damages shall be estimated as of the date of the payment of said award into the hands of the clerk of the circuit court for Waukesha county; and that said first party shall be allowed interest upon such compensation and damages from said date. *Fifth.* Upon such hearing each of the parties hereto may be represented by counsel, and shall be allowed one day for the introduction of evidence; and at the conclusion of the evidence one day shall be allowed for arguments, to be apportioned in such manner as such arbitrators may deem proper; and at the conclusion of said arguments the said arbitrators shall make their decision as to the matter submitted to them, in writing, to be signed by at least two of said arbitrators, and shall notify each party thereof, and the decision of any two of said arbitrators so made shall be binding. *Sixth.* The parties hereto do hereby mutually bind themselves, their heirs, executors, administrators, successors, and assigns, to abide by the decision of the arbitrators made as herein provided, and within ten days after notice of such decision to make such payments or restitutions in the premises as shall be required thereunder, and to dismiss of record all appeals from the said award."

Now, while it may be conceded to be the law that an actual submission of a controversy to arbitration operates as a discontinuance of a pending suit between the parties involving the same controversy, I should certainly very much doubt, if the question were an original one, whether a mere agreement to arbitrate in the future would have that effect. Let us examine with some care the authorities that have been referred to in the very able argument of Mr. Flanders. All that need be said of the case of *Muckey* v. *Pierce*, 3 Wis. 307, is that it was there held that the submission of a case to arbitrators by the parties works a discontinuance of the suit. It appears from the statement of facts in the case that the arbitrators were actually chosen; that the matter in controversy was submitted to them, and that they met together to consider the matters in issue in pursuance of the submission. In the opinion of the court it was said that the reason why the submission of the cause to arbitrators had the effect to discontinue or dismiss the suit was that the parties had chosen another forum for the determination of the matters in controversy between them; and the court in which the suit was pending at the time of the submission would not proceed further with the case, but would leave the parties to the tribunal they had created for themselves. There, as it thus appears, the forum had been created, the tribunal had been organized, and proceedings had been actually taken by the parties in pursuance of the submission before that tribunal. In the case of *Bigelow* v.

*Goss,* 5 Wis. 421, the parties had agreed to submit the matters involved in the suit to the decision of a person who was named and agreed upon as arbitrator; and it was stipulated that one of the parties, who had obtained a judgment against the other, was not to prosecute his judgment, or in any manner make use of it. It was held by the court that the arbitration agreement as made, worked a discontinuance of all proceedings upon the judgment, for the reason that the parties had chosen a tribunal other than the court, in which to settle and adjust their controversies. There, as we see, the arbitrator was chosen and designated; the tribunal was created before which the parties were to come for the final disposition of their dispute. Such being the facts of that case, it does not seem to me that it is an authority which goes to the extent contended; namely, that such an agreement as we have in the case at bar, nothing having been done under the agreement, no arbitrator having been chosen, works a discontinuance of the suit. The case of *Thornton* v. *Woolen Mills,* 41 Wis. 265, was one where the parties agreed upon a settlement of the controversy between them. A settlement was made, and, of course, that worked a discontinuance of the pending suit between them involving the same controversy. In the opinion of the court, Mr. Justice Lyon says

"Had this whole controversy been submitted to arbitrators, and had the arbitrators awarded that the parties should do precisely what they have done, there can be no doubt that the submission and award * * * would have worked a discontinuance of the action."

*Dock Co.* v. *Assurance Co.,* 5 Pac. Rep. 232, cited by counsel for the defendant, was a suit upon a fire insurance policy, which contained a condition that in case of loss and a difference of opinion as to the amount of damage, the same should "be submitted to two disinterested and competent men, whose award shall be conclusive and binding on both parties." The court held this to be a condition precedent, and that therefore the party who had sustained a loss could not maintain a suit upon the policy, regardless of this condition. We all understand the distinction between a condition precedent and a mere collateral agreement, and the court, in its decision in the case cited, simply enforced that distinction, by holding that the condition precedent must first be complied with. The case of *State* v. *Chamber of Commerce,* 20 Wis. 63, only holds that actual submission of a matter in controversy between the parties to the arbitration of a committee of the chamber of commerce operated as a discontinuance of a suit at law pending between the parties involving the same controversy. *Hills* v. *Passage,* 21 Wis. 298, was a case of a reference of a cause for trial to the judge of the court, and it was held that such a reference, although not a valid statutory reference, had the effect of a consummated submission to arbitration, and therefore worked a discontinuance of the pending action between the parties. *Bank* v. *Trust Co.,* 22 Wis. 231, was like the case just noticed, where there was an actual reference of a cause by submission to the judge of the court in which it was pending, and in which such a reference was held to work a discontinuance of the suit. As will be readily observed, none of the cases referred to, hold that a mere agreement, like that in the case at bar,

to submit a controversy to an arbitrator at some future time,—the agreement being thus purely executory, no submission having been actually made, and no arbitrator having been actually chosen,—is sufficient to abate or to work a discontinuance of a pending suit between the parties to such agreement, involving the same controversy.

Now, there are some other cases to which the attention of the court has been called on the argument, which are to the effect that even if a mere agreement to arbitrate could have the effect upon a pending suit contended for by counsel for the defendant, if the party who wishes to insist upon the discontinuance does not in the outset do that, but proceeds without objection in the trial of the case on the merits, that is a waiver of the right to claim that a discontinuance has resulted from the arbitration agreement. In *People* v. *Common Pleas*, 1 Wend. 314, it was held that the submission of all suits and controversies to arbitration is a discontinuance of a suit pending in court. But a party may waive such discontinuance by appearing at the trial of the cause and defending the same. In the opinion, SUTHERLAND, J., says:

"The party who might have insisted on the discontinuance, was competent to waive it; and in this case it was waived by the defendant's counsel appearing on the trial, cross-examining the plaintiff's witnesses, and addressing the jury."

To the same effect are the cases of *Paulison* v. *Halsey*, 38 N. J. Law, 488, and *Smith* v. *Barse*, 2 Hill. 387. My conclusion is that the making of this arbitration agreement—nothing having been done by the parties under it—did not work a discontinuance of this suit. But if the court is wrong in that, I am inclined to think that the discontinuance has been waived by the acts and conduct of the defendant in proceeding to a trial of the case and contesting it upon the merits. There are other authorities to which reference should be made, which hold as matter of settled law that a mere agreement to refer a dispute to arbitration cannot be set up as a defense in a suit at law; in other words, that the jurisdiction of a court cannot be ousted by a mere agreement to refer to arbitration, and that such an agreement cannot be set up in bar of an action, after it has been entered into. In the case of *Tobey* v. *County of Bristol*, 3 Story, 800, one of the questions was whether the representatives of a county had actually made an agreement to submit a certain question to arbitration. Upon that question, Mr. Justice STORY was in doubt whether the commissioners of the county had taken such proceedings as legally bound the county. After considering the question he says:

"But suppose it to be otherwise, and here there was a real contract or agreement, not conditional, but absolute, on the part of the commissioners to refer the claims to arbitration, can such an agreement be enforced by a court of equity? No case can be found, as I believe, and, at all events, no case has been cited by counsel, or has fallen within the scope of my researches, in which an agreement to refer a claim to arbitration has ever been specifically enforced in equity. So far as the authorities go, they are altogether the other way. The cases are divided into two classes,—one where an agreement to refer to arbitration has been set up as a defense to a suit at law as well as in equity; the other, where the party as plaintiff has sought to enforce such an agreement

in a court of equity. Both classes have shared the same fate. The courts have refused to allow the former as a bar or defense against the suit, and have declined to enforce the latter as ill-founded in point of jurisdiction."

This is the statement of the law on the subject, as made by Mr. Justice STORY. And the same adjudication, substantially, was made by the court in the case of *Campbell* v. *Insurance Co.*, 1 MacArthur, 246, where it is said (page 257:)

"It is not to be denied that a mere agreement between the parties that any future differences growing out of their contract shall be decided by arbitrators or referees thereafter to be chosen, will not be allowed by the courts to oust their jurisdiction."

The court then proceeds further in the opinion to point out the distinction between a mere agreement to arbitrate, and an actual submission to arbitration. In *Thompson* v. *Charnock*, 8 Term R. 139, Lord KENYON said:

"It is not necessary now to say how this point ought to be determined if it were *res integra,* it having been decided again and again that an agreement to refer all matters in difference to arbitration is not sufficient to oust the courts of law or equity of their jurisdiction."

Again, in *Street* v. *Rigby*, 6 Ves. 821, Lord ELDON said:

"It is enough for me to say it is not a necessary consequence of a covenant to refer that the party thereby agreed to forbear to sue. I do not enter into the question of the effect at law of a covenant to forbear to sue. But, supposing it good in strict law, it cannot be maintained that, having covenanted to refer, a party has covenanted to forbear to sue; and, if not, he has only left himself open to an action for damages if he does not refer; which the suit does not prevent, if thought desirable."

Further, in *Mitchell* v. *Harris*, 2 Ves. Jr. 129, it was held that a covenant to refer to arbitration only entitles to damages, but is no bar to a suit or action. A mere agreement to refer to arbitration, where no reference has taken place, cannot take away the jurisdiction of any court. These authorities, I think it must be conceded, entirely dispose of the proposition here urged, that during the pendency of this arbitration agreement the plaintiff could not have brought a suit against the defendant to determine the controversy between them, and that neither of the parties could prosecute the appeal taken from the award of the commissioners in the first instance.

For the reasons stated, the court is of the opinion that this arbitration agreement cannot be used by the defendant as a defense, either in bar or in abatement of this suit.