Clark *v.* Crego.

EZRA W. CLARK *vs.* CHAUNCEY M. CREGO.

If the complaint, in an action to recover the possession of real estate, is defective in not stating the nature and quality of the estate claimed by the plaintiff, it should be demurred to. It does not follow, because it is defective in some particulars, that no cause of action is made out by the facts stated. After issue has been taken, by the answer, upon the facts alleged in the complaint, and new matters have been set up by way of defense, the objection can not be taken by motion to dismiss the complaint.

A deed reciting a former deed which has been lost, and ratifying and confirming it, may be received in evidence, either as an original conveyance itself, or as evidence of the conveyance therein recited, as against a person who is a privy in estate both with the grantor and grantee in that instrument. It is evidence that the premises had been, and were, conveyed to the grantee for the uses and purposes therein mentioned.

Where an express trust is attempted to be created for purposes other than those enumerated in section 55 of the statute of uses and trusts, (1 *R. S.* 728,) the conveyance is valid as a power in trust only. It gives the *cestui que trust* no estate or interest in the land, but the land will be held and continued in whosoever hands otherwise entitled it may come, subject to the execution of the trust as a power. His right is a vested right to enforce the execution of the trust in his favor in a court of equity, and is clearly an assignable interest; and the assignee can enforce the execution of the trust power, in equity, the same as the person for whose benefit the power was created.

Where a trustee dies before the trusts have been executed, the trust estate, with all the powers and duties of such trustee, vest in the Supreme Court, which has full power to appoint a new trustee, without notice to the *cestuis que trust,* or the person in possession of the premises.

A prior deed, not acknowledged or recorded, will not prevail as against subsequent deeds duly acknowledged and recorded, the grantee in which is a purchaser in good faith and for a valuable consideration.

One who has taken title to one half of an undivided farm from a trustee and the *cestui que trust,* and has occupied and held the other moiety as the tenant

of the trustee, under and by virtue of an agreement creating the relation of landlord and tenant, can not be permitted to say, as against the grantee of the trustee of that moiety, that the trustee had no valid title.

Where a tenant in common served a written notice and demand of possession in common with him, upon his co-tenant, and again made a similar demand verbally, which demands were not complied with, but intermediate the two notices, the tenant notified took a conveyance of the entire premises from a hostile source, and set it up in his answer to an ejectment brought by his co-tenant, as a defense; *Held* that this was clearly enough to warrant a jury in finding an *ouster* by the defendant.

*Held, also,* that the defendant was not entitled to notice to quit, under these circumstances.

MOTION by the defendant for a new trial on a case and exceptions, ordered to be heard in the first instance at general term. The action was commenced in April, 1864, to recover possession of a farm in Conesus, Livingston county. The plaintiff in his complaint claims the undivided half of the farm, but does not state what the nature of his interest is, or by what right he claims, or whether he claims a fee simple interest, or otherwise. The answer was : 1st. A general denial. 2d. That on and before June, 1840, one Samuel Jones Scott owned and possessed the farm in question, and in that month and year, conveyed the same by deed to Orlando Hastings, trustee of Rebecca Scott, *in trust,* to receive the rents and profits and apply the same to and for the use of the said Rebecca Scott, during her natural life, and then in trust to convey an undivided half thereof to the said Samuel Jones Scott, (the grantor,) if he should be then living, or if not living, to such person or persons as would be entitled to inherit the same if he had died seised thereof, and the other undivided half to John R. Scott, if he should be then living, and if not then living, to such person or persons as would be entitled to the same if he had died seised thereof ; that said deed, being lost, was confirmed in December, 1848, by another deed from same to same, &c. ; that Hastings went into possession under said deed ; that in 1851 he and Rebecca Scott, with the knowledge and consent, and by the procurement of said Samuel Jones Scott, conveyed the undivided one-half of

Clark *v.* Crego.

the farm to the defendant Crego ; that about the same time said Hastings leased the other half to the defendant ; that the defendant paid the full value of the half deeded to him ; that the defendant went into possession of the whole farm under said deed and lease, and has been in possession since, and had no notice to quit the half leased. 3d. That on and before November, 1839, the said Samuel J. Scott owned and possessed the said farm, and at that time conveyed the whole farm to Lester B. Crego and Joseph Wells, in trust to sell the same for the benefit of creditors ; .that said Wells and Crego accepted the trust, &c. and on the 12th of October, 1863, conveyed the whole farm to the defendant, who is the owner thereof and in possession as such owner ; that the · plaintiff had notice of such conveyances before he acquired any interest, colorable or otherwise.

All the facts set up in the defendant's second and third answers were proved on the trial.

The cause was tried at the Livingston circuit before JOHN-SON, Justice, and a jury, in January, 1866, and a verdict ordered by the court for the plaintiff.

*Geo. F. Danforth,* for the plaintiff. I. None of the exceptions were well taken. · 1. If the complaint was insufficient, the objection should have been taken by motion or demurrer. 2. The deed from Masterton Ure and others to Samuel Jones Scott, was properly recorded in Livingston county—and the proof of acknowledgment sufficient. (*Laws of* 1821, *chap.* 19. · 2 *R. S. 4th ed.* 168.) 3. The deed of Scott and wife to Hastings was a good deed of conveyance—as well as a deed of confirmation—and this without reference to any former· deed—and is valid as a trust. (*a.*) To receive the rents and profits, and apply the same as therein directed. (*R. S. part* 2, *chap.*·1, *title* 2, *art.* 2, § 55, *sub.* 3.) (*b.*) And as such, or as a power in trust, (*Id.* §§ 58, 59, 60, 61,) for the conveyance of the land to the parties therein named, S. J. Scott and J. R. Scott, each an undivided half.

The conveyance declares to whom the lands to which the trust relates, shall belong at the termination of the trust. Perhaps no. conveyance was necessary after the death of Rebecca Scott, but the title in John R. Scott, or his assignee or trustee, is not harmed by it. (c.) Regarded as a power in trust, the deed is valid. (Id. article 3 of Powers, §§ 74, 78, 94, 95. Selden v. Vermilyea, 1 Barb. S. C. Rep. 58.) 4. The several deeds from Samuel L. Fuller and John R. Scott convey a perfect title of the premises in question to the plaintiff. (a.) Samuel Jones Scott, on the 24th day. of June, 1840, conveyed the whole farm to Orlando Hastings, in trust, after the death of Rebecca Scott, to convey one half to Samuel Jones Scott, and one half to John R. Scott. Orlando Hastings died March, 1861. November 30, 1861, John R. Scott conveyed the premises in question to the plaintiff. Rebecca Scott died May 9, 1862. February 16, 1863, John R. Scott, one of the appointees, executed and delivered another conveyance of the same premises to the plaintiff. (b.) These conveyances, (Rebecca Scott having died,) vested the title in the plaintiff, without any conveyance from Hastings, or his successor. (c.) Orlando Hastings, the trustee named in the deed from Samuel Jones Scott, died March, 1861. The trust confided to him, so far as it was then unexecuted, vested in the Supreme Court as the successor to the powers of the Court of Chancery. (1 R. S. part 2, title 5, art. 2, chap. 1, p. 730, § 68.) (d.) And thereafter Samuel L. Fuller was appointed by the Supreme Court trustee in its place, and directed to execute a conveyance of the premises to the plaintiff. John R. Scott was the person for whose benefit the trust was created, as regards the premises in question.

The plaintiff stands in his place as assignee or grantee, and he might "enforce the performances of the trust in equity," (1 R. S. 729, § 60,) but this was not necessary, as by the voluntary action of all parties concerned—the court concurring—the same end has been reached. Enforcing the trust would have compelled a conveyance. That the plain-

tiff has. July 5, 1862, the plaintiff gave notice in writing to the defendant that he had purchased an undivided half of the premises of John R. Scott; that he had a deed of the same; that Rebecca Scott was dead, and he demanded possession of the premises in common with him. In March, 1864, the demand was repeated verbally. The action was commenced in April, 1864.

II. No defense was proved by the defendant. 1. The assignment, dated November 6, 1839, from Samuel Jones Scott to Lester B. Crego and Joseph Wells, can not affect the plaintiff. (*a.*) Although dated November 6, 1839, it was never acknowledged, and only proved on the 20th January, 1864. (*b.*) And it was never recorded. (*c.*) The deed from Crego & Wells, in consideration of $1, to the defendant, does not aid him. It bears date October 12, 1863, but has never been recorded. The plaintiff's title was acquired in 1861 for a valuable consideration, and his deed recorded. 2. The defendant is estopped from setting up the title so acquired by him under the assignment. (*a.*) At the time he received it, he was in possession of an undivided half of the premises in question, under a warranty deed executed by Hastings, by virtue of the same title under which the plaintiff claims the other undivided half; and of the latter, the part in question, he was in possession under an agreement with Hastings. (5 *Cowen,* 529. 13 *John.* 116. 5 *Cowen,* 483. 6 *id.* 632. 1 *Cowper,* 217. 2 *Greenl. Ev.* § 307.)

His title thus derived related to the same land claimed by the plaintiff. Both became owners through Hastings, the grantee of S. J. Scott. Each is owner in fee; the interest of each extends to the whole and not to any particular part of the land. It is an undivided interest; "neither of them knoweth his part in several." The defendant, therefore, can no more dispute the title under which the plaintiff claims than the purchaser from the heir of a deceased husband can, in an action brought by her for dower, deny the seisin of the

husband ; and that this can not be done, see *Hitchcock* v. *Carpenter*, (9 *John.* 344 ;) *Same* v. *Harrington*, (6 *id.* 290.)

As to the interest now sought for by the plaintiff, the defendant would have been estopped from denying title in Hastings, had he sought to recover it. The defendant was tenant under Hastings, "and this estoppel runs with the land into whose hands soever the land comes," and so enures to the benefit of the plaintiff, who is grantee of Hastings. (*b.*) He was entitled to no notice to quit ; but if otherwise, he received a sufficient one. The lease, or agreement for a lease, was determinable upon the death of Rebecca Scott—she died May 9, 1862. The defendant was also notified of this event and required to give up the undivided half to the plaintiff, July 5, 1862, and refused to do so. The defendant did not suggest any question for the jury, or express a wish to have any submitted to them. The damages were agreed upon, and the court properly directed a verdict for the plaintiff.

mn

*A. J. Abbott*, for the defendant. The court erred, in refusing to dismiss the complaint on the ground stated, to wit : "that it did not state facts sufficient to constitute a cause of action, for that it does not state whether the plaintiff claims in fee, or whether he claims for his own life, or the life of another, or for a term of years, specifying such lives and the duration of such term as prescribed by statute." The statute expressly requires the character of the plaintiff's claim to be thus stated in the complaint, and it is clearly necessary upon principle, that the defendant may know the nature of the plaintiff's claim, and that the record as finally made up may show clearly what rights have been determined in the action. (3 *R. S. 5th ed.* 593, § 10. *Code*, §§ 455, 471. *Ensign* v. *Sherman*, 14 *How. Pr. Rep.* 439.)

II. The court erred in receiving the deed from Ure and others in evidence under objection by the defendant, for the reasons stated. The statute provides, (3 *R. S. 5th ed. p.* 54, § 42,) that "where any conveyance shall be proved or acknowledged,

before any judge of the county court, not of the degree of counsellor at law in the Supreme Court, or before any commissioner of deeds appointed for any county or city, it shall not be entitled to be read in evidence, or to be recorded in any other county than that in which such judge or commissioner shall reside, unless in addition to the preceding requisites, there shall be subjoined to the certificate of proof or acknowledgment, signed by such judge or commissioner, a certificate under the hand and seal of the clerk of the county, in which such judge or commissioner resides, specifying that such judge or commissioner was at the time of taking such proof or acknowledgment, duly authorized to take the same, and that the said clerk is well acquainted with the hand writing of such judge or commissioner, and verily believes that the signature to the said certificate of proof or acknowledgment is genuine." The commissioner's certificate of acknowledgment to the deed offered had no such certificate as required, by the county clerk of Ontario, &c. Section forty-three of the same statute cured the defect *only* as to Ure and Gordon, but not as to Fellows, who executed the deed in his own right. For aught that appears he conveyed the greater interest; the law presumes that he conveyed one third of the interest; and yet in the absence of the certificate required of the clerk, the court received the deed as evidence of title conveyed to the plaintiff by Joseph Fellows in his own right, and not as agent of Ure and Gordon, the Pulteney estate. (*Wood* v. *Weiant,* 1 *N. Y. Rep.* 77. *Campbell* v. *Hoyt,* 23 *Barb.* 555.)

III. The court erred in receiving in evidence the *recital* deed from S. J. Scott and wife to Hastings, under objection by the defendant. The deed showed upon its face that it conveyed no title; that the title had been conveyed before by the deed recited as lost. The deed could only be evidence of an admission by Samuel J. Scott, operating as an estoppel against him, but not binding in any way upon the defendant as to the land sought to be recovered in this action. But it was received as evidence of title. Herein was error. Again,

this deed did not recite such a deed, (the lost one,) as the statute makes necessary for the conveyance of real estate. (3 *R. S. 5th ed.* 29, § 157.) It does not recite that the lost deed was subscribed, or sealed or acknowledged, or, in the absence of an acknowledgment before delivering, that it had a subscribing witness, all of which are necessary to make a valid deed. In this respect the error of receiving it was not cured subsequently by parol proof.

IV. The court erred in receiving the order offered, by the plaintiff, under objection, upon the grounds stated. 1st. The defendant was not a party to, nor had he notice of the proceeding in which the order was made. He was then in possession of the premises, and so being in possession, had a right to notice of any proceeding in court, affecting his right to such possession. 2d. Neither Rebecca Scott nor John R. Scott, the beneficiaries of the trust created by the trust deed, had notice. 3d. The petitioners in the proceeding and referred to in the order, had no right or interest in the premises sought to be recovered in this action—no right to commence or prosecute any proceeding in court affecting the right of any person in the lands in question. As executors of Hastings they had no right, &c. 4th. The order shows on its face that Fuller was appointed thereby trustee in the place of Hastings, with the authority of Hastings under the decree in chancery referred to in the order, and not as the trustee in place of Hastings of the trust created by the trust deed from Samuel J. Scott to Hastings. 5th. Fuller was appointed trustee of Rebecca Scott, &c. but not *trustee* of the "*power*" to convey, &c. created by the trust deed from Scott to Hastings. He was not appointed trustee of the trust created by the trust deed for the benefit of Samuel J. and John R. Scott.

V. The court erred in receiving in evidence, under objection by the defendant, the deed executed by Fuller under said order to the plaintiff. 1st. For the same reasons urged in support of the objections to said order, and set out in point 4

above. 2d. The act of Fuller in executing and delivering the deed has not been confirmed by the court; and demand of possession under said deed could not be made until such confirmation. 3d. He could only convey, (if the " power in trust" to convey had been vested in him by the order, which was not,) to John R. Scott directly, and not to Clark. The "*power*" must be *strictly* executed according to the conditions imposed by the grantor of the "*power.*" (3 *R. S. 5th ed.* 27, § 141.) 4th. The deed is void by reason of adverse possession in the defendant. 5th. The consent of John R. Scott, (the beneficiary of the " power") should have been expressed in the deed, or been certified in writing thereon, signed by said Scott as provided by statute. (3 *R. S. 5th ed.* § 28, 142. 11 *N. Y. Rep.* 398.) The deeds from John R. Scott to the plaintiff, (subsequently proved,) operated at best, only as an equitable assignment of his interest, (good consideration from Clark being shown,) which would enable the plaintiff to compel the conveyance of such interest to him, by action in equity, after John R. Scott had acquired the title, by an execution of the " power" to him. (2 *Story's Eq. Juris.* 366.) 6th. Fuller, in this deed, assumes to convey as trustee of Rebecca Scott, and in no other capacity; not as trustee of the " power in trust," &c.

VI. The court erred in receiving in evidence, under objection by the defendant, the deed from John R. Scott and wife to the plaintiff, of date November 30, 1861, conveying to the plaintiff the premises in question. John R. Scott had no title to convey. The legal title was in Hastings. John R. Scott had no assignable interest even. By the deed from Samuel J. Scott to Orlando Hastings in trust, &c. already referred to, an express trust in Hastings, under the statute, was created, during the life of Rebecca Scott, and the title vested in him as such trustee during her life. (3 *R. S. 5th ed.* 16, § 55. *Id.* 21, § 79.) The provision in said trust deed from Scott to Hastings, to wit, " and then in trust to convey," &c. was not valid as an " express trust," under the

statute, not being "enumerated in the preceeding sections" of the statute, but was valid as a special "power in trust," and subject to the provisions (of the statute) in relation to such "powers." (3 *R. S. 5th ed.* 21, § 77. *Id.* 23, § 94. *Id.* 24, § 98. *Id.* 25, § 115.) Being a "special power in trust," this provision in said trust deed, to wit, "and then in trust to convey," &c. operated to *divest* Hastings of the *legal estate,* under the statute, (vested in him by said deed under said tion seventy-nine,) upon the death of Rebecca Scott. Upon the death of Rebecca Scott, the legal estate reverted to Samuel J. Scott, under 3 *R. S. 5th ed.* 21, § 81, subject, however, to the execution of the "power," which he could not revoke, (in this case,) not having reserved the right to revoke it "in the instrument creating the *power.*" (3 *R. S. 5th ed.* 26, § 128.) This legal title, however, gave him no right to the possession, which he had delivered to Hastings for the purposes of the "trust" and the "power" contained in the trust deed, and which, together with the possession, would pass with the legal title only upon the due and formal execution of the "power." Hastings having died before the execution of the "power," it devolved upon the court to appoint, not such a trustee as has been appointed by the order of the court in this case, but a *trustee of the "power"* to execute it by a conveyance to John R. Scott. Until that is done, he has no *legal title* which he can convey ; nor has he, nor had he any assignable interest ; but if he had such interest, it did not pass by his deed. The "power" in question must be strictly executed to him, and no other person, as already shown. (3 *R. S. 5th ed.* 27, § 141.)

VII. The court erred in receiving, under objection by the defendant, the *second* deed from John R. Scott to the plaintiff for the same reasons urged in support of the objections to the *first* deed from the same, and fully presented in the last preceding point.

VIII. The court erred in receiving, under objections by the defendant, the *second* order of the court. 1st. For the same reasons urged in support of objections to the *first* order,

in point 4 above. 2d. This second order does not appoint Fuller "trustee of the special power in trust," created, by the trust deed from Samuel J. Scott to Hastings. It simply authorized him as *trustee of Rebecca Scott* to execute a conveyance to the plaintiff. And the conveyance actually made by him, was made *as such trustee of Rebecca Scott*, and signed by him as such, and not as "trustee of the power." He has never been appointed "*trustee of the power*," in place of Hastings, or authorized to act as such trustee. As "trustee of Rebecca Scott" he has no right to execute the "trust power" in question, nor can the court give him any such right. He should have been appointed "trustee of the power," in a direct proceeding for the purpose, to which all parties interested in the execution of the power were parties, including John R. Scott, Samuel J. Scott and the defendant, Crego, who was in possession, and whose rights were affected. The proceedings in which these orders were made were not instituted for any such purpose as is sought to be carried out thereunder. It was instituted by the executors of Hastings for the appointment in his place of a "trustee of Rebecca Scott," to the end that an accounting might be had. To allow Clark, (the plaintiff,) to intrude in that proceeding, with which he had nothing to do, for the purpose of enabling him to have *another and independent matter* adjudicated in his favor to the exclusion of the real parties interested, is illegal, certainly anomolous and contrary to all practice of the court. 3d. The petition, proceedings, deeds, &c. recited in the order should have been produced with the order, as part of the record. As among the parties to the proceeding, *perhaps* the order would be evidence of the facts therein recited. But, as against the defendant, who was not a party to such proceedings, the whole record should have been produced, to show the court had jurisdiction, the character of the proceedings, &c. To allow this order alone as proof of all this, would be like allowing the docket of a judgment as evidence thereof, instead of compelling the production of the judgment record. The orders

should have been annexed to the petition so as to form a record or roll, and this should have been produced.

IX. The court erred in receiving the second deed from Fuller to the plaintiff. 1st. For the same reasons urged to the two several orders of the court and also to the first deed from same to same. (*See points* 4, 5, 8.) 2d. This deed purports to have been executed by Fuller as "trustee of Rebecca Scott," and signed as such, under the decree in chancery, and not as "trustee of the power" created by the trust deed from Scott to Hastings. 3d. The consent of John R. Scott is not expressed in the deed, nor certified in writing thereon, pursuant to the statute. (3 *R. S. 5th ed.* 28, § 142. 11 *N. Y. Rep.* 398.) (*See point 5, sub. 5.*)

X. The court erred in denying the defendant's motion for a nonsuit. 1st. Upon the several grounds stated in the points hereinbefore made. 2d. The plaintiff had proved no title to the premises claimed in the complaint. 3d. The plaintiff had proved no sufficient demand of possession, and refusal to give possession, or ouster by the defendant. The first demand of possession was made July 5th, 1862. The grounds of the demand, as stated in the notice served, were untenable, as already shown ; he had no title under the first deeds from John R. Scott and from Fuller. The defendant had a right to refuse a claim based on these deeds. But he did not refuse. At that time the second order of the court had not been made, nor the second deed from John R. Scott and from Fuller executed. The plaintiff again made demand in March, 1864. The character of that demand does not appear. But the defendant did not then refuse to give possession. There was, in short, no ouster by the one "tenant in common," of the other, proved, as required by the statute. (4 *R. S. 5th ed.* 594, § 20. *Edwards* v. *Bishop*, 4 *N. Y. Rep.* 61.)

All the plaintiff swears to, as to the first demand, (and nothing as to the second,) is, "I did not get possession." It does not appear that the defendant drove him off the premises,

or kept him off, or even refused to allow him to take possession in common with himself.

XI. The court erred in excluding the evidence of the pendency of the suit brought by Samuel J. Scott against the defendant to recover the same premises, and that the plaintiff, Clark, knew of the pendency, &c. The object of the defendant was to show, as he most clearly had a right to show, that the *second* order of the court was made, and the *second* deed from Fuller to Clark was executed, while said suit was pending, and therefore both order and deed are *void under the statute* which provides against purchasing or taking conveyance of lands in suit. (3 *R. S. 5th ed.* 972, §§ 5, 6, 7. 4 *Kent's Com. 5th ed.* 449 ; *10th ed.* 532. 2 *Hill,* 526. 20 *Barb.* 429. *See also Crary* v. *Goodman,* 22 *N. Y. Rep.* 170.) The defendant had the right to prove the pendency of the suit in question, for the purpose also of showing that he was holding *adverse possession against Scott,* (whose claim he was resisting,) and consequently against Clark, the plaintiff, whose pretended right is derived from Scott, and that consequently the second order and second deed from Fuller were void under 3 *R. S. 5th ed.* 30, § 167.

XII. The court erred, at the close of the case, in refusing to nonsuit the plaintiff; in refusing to direct a verdict for the defendant ; in directing a verdict for the plaintiff. The plaintiff had failed to make out a case for recovery·; the defendant had made out a perfect defense. 1st. The complaint was insufficient. (*See point* 1.) 2d. The deed from Ure and others was insufficient, as proved, to convey title to Samuel J. Scott. (*See point* 2.) 3d. The *recital* deed from Samuel J. Scott to Hastings was no evidence of title, &c. (*See point* 3.) 4th. The first *order* of the court was of no effect as evidence towards proving title in the plaintiff. (*See point* 4.) 5th. The first deed from Fuller to the plaintiff, conveyed no title. (*See point* 5.) 6th. The first deed from John R. Scott to the plaintiff, conveyed no title. (*See point* 6.) 7th. The second deed from John R. Scott to the plaintiff,

conveyed no title. (*See points* 6 *and* 7.)    8th. The second order of the court was of no effect as evidence towards proving title in the plaintiff. (*See point* 8.)    9th. The second deed from Fuller to the plaintiff, conveyed no title. (*See point* 9.)    10th. The plaintiff proved no sufficient demand of possession, and refusal to give possession, or ouster by the defendant. (*See point* 10, *sub.* 3.)    11th. The defendant proved, as matter of defense, that before the commencement of suit, the whole title to the entire premises in question had become vested in himself. By the deed from Samuel J. Scott to Lester B. Crego and Joseph Wells, the whole legal title was duly conveyed to them; and by their deed to the defendant the whole legal title was duly conveyed to the defendant. The defendant is not estopped from setting up the title derived from and under these deeds.

The defendant went into possession, under Hastings as the owner, (in trust,) of the life estate during the life of Rebecca Scott. It was this estate, (as to the undivided one half,) that the defendant leased. This estate became extinct upon the death of Rebecca Scott. A tenant is never estopped from setting up the fact that after his possession commenced the title or right of his landlord has changed, or become extinct. Upon the death of Rebecca Scott the relation of landlord and tenant ceased, and the defendant was therefore in position to dispute the plaintiff's alleged title. His position, in that regard, was that of a naked trespasser. The relation of landlord and tenant does not exist as between the plaintiff and the defendant. That relation only exists where the one party may demand rent, as such, of the other. No such right is pretended here. Indeed, the plaintiff, by seeking in his complaint to recover *mesne profits*, as against a trespasser, concedes this point. The lease from Hastings was never assigned to the plaintiff, and he never acquired any right to rent or otherwise thereunder. 12th. The defendant was entitled, (if the relation of landlord and tenant existed,) to *notice to quit*. Rebecca Scott died May 9th, 1862. The lease terminated

May 1st, 1861, by its terms. The suit was commenced April 19, 1864. For about four years, after the termination of the lease, and, *with the acquiescence of the plaintiff*, for about two years after the death of Rebecca Scott, the defendant remained in possession, and thus became a "*tenant at will from year to year*," and clearly entitled to notice to quit, terminating with the year, to wit, the 1st of May, the time of year when he went into possession.

*By the Court*, JOHNSON, J. If the complaint was defective, as now suggested by the defendant's counsel, it should have been demurred to. It may be that the complaint would have been held defective on demurrer, in not stating the nature and quality of the estate claimed by the plaintiff. But it does not follow, because it is defective in some particulars, that no cause of action is made out by the facts stated. Issue was taken upon the facts alleged in the complaint by the answer, and new matters set up by way of defense, and there has been a full trial upon the merits.

The first deed introduced by the plaintiff in evidence was properly admitted. It was executed by an agent of the Pulteney estate, and the general provision, requiring a certificate by the county clerk, does not apply to it. (1 *R. S.* 759, § 19.)

The deed from S. J. Scott and wife to Orlando Hastings was properly received in evidence, either as evidence of an original conveyance itself, or as evidence of the conveyance therein recited, as against the defendant, who is a privy in estate both with the grantor and grantee in that instrument. (*Cowen & Hill's Notes*, 160, *and authorities there cited.*) It is evidence that the premises had been, and were conveyed to Hastings for the uses and purposes therein mentioned. The conveyance was in trust, and so far as it provides for the receipt and application of the rents and profits by the grantee during the life of Rebecca Scott, creates a valid trust under the Revised Statutes. (1 *R. S.* 728, § 55, *sub.* 3.) The

trust in this respect being valid, the whole estate vested in the trustee, subject to the execution of the trust, according to section 60 of the above cited statute. So far as that conveyance undertook to create an express trust in favor of John R. Scott, it being for purposes other than those enumerated in section 55 of the statute, the conveyance was valid as a power in trust only. (§ 58.) It gave him no estate or interest in the land ; but the land was after held and continued in whose ever hands, otherwise entitled, it might come, subject to the execution of the trust as a power. (§ 59.) His right was a vested right to enforce the execution of the trust in his favor in a court of equity, and was clearly an assignable interest ; and the assignee could enforce the execution of the trust power in equity, the same as the person for whose benefit the power was created. (1 *R. S.* 735, §§ 103, 104.) The several conveyances by John R. Scott and wife to the plaintiff did not, and could not operate to convey any title to the land, whether executed before or after the death of Rebecca Scott; but looking at the manifest design and intention of the parties to those instruments, equity must hold them to operate as a complete and perfect assignment to the plaintiff, of the interest which John R. Scott had in respect to the premises by virtue of the power in trust in the trust deed to Hastings. For that purpose, if for no other, they were properly received in evidence.

Hastings, the trustee, died in March, 1862, before the trusts created by the deed, or any of them, had been fully executed. And the trust estate, with all the powers and duties of the original trustee, vested in this court, which had complete power to appoint some person to execute all the powers, and perform all the duties remaining unexecuted and unperformed by such original trustee. (1 *R. S.* 730, § 68.)

The trustee having died, leaving the trusts unexecuted, on the 17th January, 1862, upon the petition of the executors of the estate of such deceased trustee, Samuel L. Fuller was by order of this court appointed trustee of Rebecca

Scott, in the place of such deceased trustee, and was " intrusted with all the powers, and charged with all the duties pertaining to the said trust." Under this appointment, on the 23d of July, 1862, assuming to act as trustee under his appointment in the execution of the power in trust, Fuller executed to the plaintiff a conveyance of one half the premises according to the requirements of the trust deed to Hastings. A further order was obtained from this court on the 7th of March, 1864, expressly authorizing said Fuller to convey the premises in question to the plaintiff, under which order another conveyance was made of the same, on the 16th of March, 1864. The defendant's counsel objected to these orders, and the conveyances under them, on several grounds. Amongst others was the objection that the defendant was entitled to notice of the proceedings to appoint Fuller to execute the trust ; and also that Rebecca Scott and John R. Scott were entitled to notice. I do not see upon what grounds they, or either of them, were entitled, as matter of law, to notice. Conceding that some of them had, or may have had, some interest in the question, it does not follow that they were entitled to notice. The objection principally relied upon, however, seems to be that under neither of the orders, was Fuller appointed as trustee of either Samuel J. or John R. Scott, or invested with authority to execute the powers in trust created by the trust deed. This, I think, is a mistake. By the last order he is expressly authorized and required to make this very conveyance, and upon the ground, as appears upon the face of such order, that doubts have arisen as to the extent of the powers of said Fuller under the first order, and whether said order is sufficiently explicit to enable him to execute a conveyance properly. If the court could confer the power, I do not see why it has not done so by these several orders. The objection that Fuller was not appointed to execute the trusts created by the trust deed, seems to me to be founded more in verbal criticism than in matter of substance. Looking at all the proceedings, and the scope and

terms of both orders, no doubt should, I think, remain on this question. I am of the opinion, therefore, that the plaintiff, by means of these several conveyances to him, acquired a perfect title in fee simple to the moiety of the premises described in the complaint.

The defendant's claim of title to the entire premises, by virtue of his deed from the assignee of Samuel J. Scott, is defective, and can not prevail against the title of the plaintiff. The assignment by Samuel J. Scott was made November 6th, 1839, several months before the execution of the trust deed to Hastings, and apparently conveys to the assignees therein named, the premises in question, but it was never acknowledged or recorded. It was first proved by the subscribing witness thereto, so as to make it admissible in evidence, on the 20th of January, 1864. The deed from the assignees, to the defendant, was executed Oct. 12, 1863, about twenty-four years after the assignment. This deed was acknowledged within a few days after its date, by the grantors therein, but has never been recorded. The consideration named in it is one dollar only. The trust deed to Hastings, or rather the subsequent deed of confirmation, was duly recorded, and all the plaintiff's deeds, both from John R. Scott and Fuller, have been recorded in due form and manner. He is unquestionably a purchaser in good faith and for a valuable consideration, and his deeds being first recorded, must prevail against the conveyance from the assignees. There is no pretense that the plaintiff ever saw or heard of the assignment, until some time in 1864, which was long after he had become a purchaser. But independent of this, the defendant is precluded from setting up that Hastings had not a valid title, under the trust deed. He took title to the one undivided half of the premises from Hastings and Rebecca Scott, and the other moiety, that now claimed by the plaintiff, he occupied and held as the tenant of Hastings, under and by virtue of an agreement creating the relation of landlord and tenant. He can not now be permitted to say, as against the grantee

Clark *v.* Crego.

of Hastings, of this moiety, or of the person acting in his stead, that Hastings had no valid title. (*Till. Ad. on Eject.* 247, *and cases cited.*)

The remaining question is, whether the plaintiff proved enough to establish an ouster by the defendant, of him, the plaintiff, as co-tenant. This is generally a question of fact for the jury. But here there was no conflict of evidence on the point, and the defendant did not ask to have the jury pass upon it. No exception was, or could, therefore be taken for any error in not permitting the jury to pass upon it. The only question which can now be raised is whether the evidence was sufficient to have authorized the jury to find an ouster. The plaintiff, as appears, first served a written notice and demand of possession in common with the plaintiff, in July, 1862. He again made a similar demand, verbally, in 1864, before the commencement of this action. Such possession was not given to him by the plaintiff. In the mean time, between the two notices, the defendant takes a conveyance of the entire premises from a hostile source, and claims under it to be sole owner, and sets it up, in his answer, as a defense to the plaintiff's claim. This was clearly enough to have warranted a jury in finding an ouster by the defendant. (*Till. Ad. Eject.* 56.) The defendant was not entitled to notice to quit, in such a case. (*Livingston* v. *Tanner*, 14 *N. Y. Rep.* 64.) The mesne profits were agreed upon.

I am of the opinion, therefore, that there was no error, and that a new trial should be denied, and that the plaintiff have judgment on the verdict.

[MONROE GENERAL TERM, March 4, 1867. *Welles, E. Darwin Smith* and *Johnson,* Justices.]