WILLIAM CULVER et al., Respondents, *v.* MARY C. RHODES, Appellant.

To establish an adverse possession by one tenant in common, such as will effect the ouster of his co-tenant, notice in fact to the latter of the adverse claim is required, or unequivocal acts open and public, making the possession so visible, hostile, exclusive and notorious, that notice may fairly be presumed.

Where one of several remaindermen who was living with the tenant for life upon the land, accepted a deed of a portion thereof without warranty and for a nominal consideration, and thereafter occupied, claiming to hold the premises conveyed adversely under the deed, but there was no apparent change of possession or occupation, and no notice of a hostile claim given to the co-tenants, *held,* that the giving and receiving of the deed was not in itself an act hostile to the rights of the co-tenants, but that both the deed and the possession under it were consistent therewith, as the grantor could convey the life estate, so that it gave no notice or intimation of a hostile claim ; and that, therefore, there was no adverse possession, such as would defeat an action for partition.

The authorities as to the notice requisite in such case collated.

*Jackson* v. *Smith* (13 Johns. 406) ; *Clapp* v. *Bromagham* (9 Cow. 530), distinguished.

(Argued December 5, 1881; decided January 17, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made September 19, 1879, which affirmed a judgment in favor of plaintiffs, entered upon the report of a referee. The nature of the action and the material facts are stated in the opinion.

*Merritt King* for appellant. Defendant having possessed and claimed the land in suit adversely to plaintiffs, her title cannot be tried, passed upon or determined in an action of partition. (*Florence* v. *Hopkins*, 46 N. Y. 182; *Van Schuyler* v. *Mulford*, 59 id. 420; *Wilkin* v. *Wilkin*, 1 Johns. Ch. 111; *Phelps* v. *Green*, 3 id. 302; *Clapp* v. *Bromagam*, 9 Cow. 530; *Jackson* v. *Bristow*, 12 Johns. 452; *Jackson* v. *Smith*, 13 id. 406.) Though defendant's possession had begun as tenant in common, and not hostile to plaintiffs' claim, when she took a title hostile to plaintiffs, and occupied and claimed to hold adversely to them, that moment her holding became adverse, and partition could not be maintained. (*Matthewson* v. *Johnson*, 1 Hoffm. Ch. 560; 46 N. Y. 186.)

*Erastus P. Hart* for respondents. The claim that the land in suit was an overplus to which the testator had no title, and that, therefore, because of possession, defendant could claim to hold it and get title to it by possession, is not sufficient as a claim of title on which to found an adverse possession. (5 Cow. 346; 1 Comst. 527.) A possession adverse to the owners of the remainder could not be initiated by the tenant for life, entering under a will or instrument creating both estates. (13 Barb. 147–152; 3 Washburn on Real Property, 132, chap. 11, §§ 7, 30.) When the question as to the title to land is of an equitable nature, the Court of Chancery will try it. (1 Johns. Ch. 117; 4 id. 271; 2 Lead. Cas. in Eq. 647; 40 N. Y. 191, 204, 207.)

FINCH, J. This appeal would rest upon a sound basis if the facts fitted the foundation. The action was brought for a partition of real estate, in which, it was alleged, the appellant was

interested as a tenant in common. As to a small part of the farm sought to be divided, she pleaded, in bar of the right of action, a hostile title and actual adverse possession. The defense was good if proved to be true. At the time of the trial the rule had been settled in this court, that partition could not be enforced where ejectment was the appropriate remedy; that it was possible to transform a subsisting tenancy in common into an adverse and hostile possession; and that where there had been an ouster of co-tenants, and an exclusive and hostile possession actually taken, which denied the common right and planted itself upon a several and individual ownership, an action of partition could not be maintained until the question of title was settled at law. (*Florence* v. *Hopkins*, 46 N. Y. 182.) It is upon this ground that the defense is rested. We cannot answer it by saying that there was no such gore or intervening strip of land between the two purchases of the original testator, and, therefore, the deed of the widow conveyed nothing in severalty, and the appellant acquired no title. To reason in that manner is to try the question of title in a forum which cannot try it, and assume the very jurisdiction which is denied. The inquiry must necessarily begin and end with the one question, whether, at the commencement of the action of partition, the defendant, Mary Catherine Rhodes, had acquired such an actual adverse possession of the parcel in dispute as amounted to an ouster of her co-tenants, and made her possession no longer theirs, but solely hers as a hostile and separate owner. To solve this question requires a careful study and precise understanding of the facts bearing upon the character of that possession.

The farm of over one hundred acres, through the center of which ran the narrow strip or gore in dispute, was owned by Samuel Hollenbeck in his life-time, who bought it in two parcels of separate grantors, but occupied it as one farm, the buildings standing upon what is now called the gore. His occupation was of the entire farm, as owner, and his undisputed possession covered the premises here in question. By his will he devised to his widow, Tamar Hollenbeck, a life estate in

the whole farm, except two small parcels, with remainder over upon her death to his three daughters, Sally, Elizabeth and Mary Catherine. Upon his decease the rights of the parties as fixed by the will were modified by a conveyance to his three other children, Alpha, Francis and Amy, of about seven acres to each, but the remainder of the farm, including the alleged gore, was in no respect affected or the ownership of it under the will modified or changed. The widow entered into possession as tenant for life, occupying the house and the farm as such tenant, her daughter, Mary Catherine, living with her, and continued such occupation for more than twenty years. During this entire period her possession was that of a life tenant, and under the will of her testator. It is true that she claimed, on several occasions, that there was a surplus of land in the farm not covered by the original deeds and which, after the expiration of twenty years, she said had become hers, but until her subsequent deed to her daughter such surplus was never identified or located, and at no time separated in any manner from the rest of the farm, or occupied in any different way. Previous to the deed referred to there was no act of hers which denied or questioned the title of her co-tenants, and no occupation which could possibly be deemed hostile or adverse. The judgment, in the action brought against her by her co-tenants for waste, just before the conveyance to Mary Catherine, is conclusive upon this point, at least. (*Cook* v. *Travis,* 20 N. Y. 400.) The complaint against her rested upon the rights of her co-tenants as such, and her answer conceded their asserted ownership, and made no claim of title to any part of the farm, adversely to that which passed from the testator. During the whole period of her occupancy, to the moment when she executed the deed to Mary Catherine, her possession was as life tenant, and in harmony with and not in hostility to the title in remainder. The finding of the referee accords with this statement of the facts.

But on the 3d of May, 1870, while the action for waste was pending, the widow conveyed to Mary Catherine the gore in dispute by a deed without warranty and for a nominal con-

sideration, and which deed at a later date was duly recorded in the proper office. The grantee accepted the deed, but did nothing more. No change in the possession or occupation took place. No notice of a hostile claim, either by word or act, was given to the co-tenants after the conveyance. The grantee was herself a witness, and is able to say no more than that, from the receipt of the deed, she had been in the possession all the time as owner, and had occupied the premises under the deed. And the referee, instead of finding an actual adverse possession, or an assertion of the entire title, finds only that the grantee occupied, and "*claiming* to hold the premises adversely under the deed." It is very certain, therefore, that she relied wholly upon the effect of the deed to characterize her occupation, and for that reason alone claimed it to be adverse. So that nothing whatever existed in the conduct of either Tamar or Mary Catherine which by possibility could be construed into an act hostile to the right of the cotenants, unless the mere giving and receiving of the deed constituted such an act. In every other respect the current of possession and occupation flowed in perfect harmony with the rights of the plaintiffs. It is argued that the grantee's possession, under the widow's deed, is necessarily adverse, and the head-note in *Jackson* v. *Smith* (13 Johns. 406) is cited as authority for the doctrine. Its language is: "Possession of land by a purchaser under a deed for the entire lot, given without right in the grantor, is adverse to the rightful owners, though tenants in common with the grantor." The case itself does not warrant this construction. On the contrary, the court expressly declared that what would constitute an adverse possession as against tenants in common was in no respect involved in the decision. The deed of Reuben described him as heir at law, purported to convey the entire fee, and a plainly exclusive and hostile possession followed it. We are also referred to *Clapp* v. *Bromagham* (9 Cow. 530). But in that case the occupant not only entered claiming the whole property, but denied possession to his brother and sister as co-tenants, sold the farm to a stranger, took the entire proceeds of the

sale, and put his grantee into the exclusive possession. We have been referred to no case, and can find none, which justifies the effect claimed for this deed. On the contrary, the plain current of authority runs in the opposite direction. In *Holley* v. *Hawley* (39 Vt. 532) it was held that the taking of a deed by one tenant in common from a third person, and spreading it on the record, would have no effect as the equivalent of an ouster, unless accompanied and followed by a hostile claim of which the co-tenant had knowledge, and by acts of possession, not only inconsistent with, but exclusive of the right of such co-tenant. If this be true of the deed of any third person, much stronger is its application to a case like the present, where the grantor is tenant for life. The deed of Tamar was in no just sense hostile or adverse to the title of the tenants. in remainder, but perfectly consistent therewith. She could convey her life estate in five acres; by her deed she did convey it; the grantee became the owner; and her possession under the deed was just what that instrument effectively conveyed. Both the deed and the possession under it were perfectly consistent with the rights of the remaindermen; in no manner threatened or assailed them; gave neither notice or intimation of any hostile claim, and could not be deemed adverse. It was very justly said in *Parker* v. *Proprietors of Locks, etc.* (3 Metc. 91), that if a person enters, having a title and right to enter, his entry and possession are presumed to be in conformity with his title, and no man is presumed without evidence to have done, or intended to do, an unlawful act. So that, in the present case, to the co-tenant looking on, nothing was apparent, except that the widow conveyed the life estate which she owned, and her grantee took a commensurate possession, and that only. We are thus led to consider· the reason and justice of the rule, which should measure the adverse possession necessary to effect the ouster of a co-tenant. Assuredly it should be one which requires notice in fact to the co-tenant, or unequivocal acts, so open and public, that notice may be presumed of the assault upon his title, and the invasion of his rights. The adverse possession sets running a

limitation, which in the end may operate as a bar. It does so only upon the theory that the party disseized ·has slept upon his rights, and by silence and inaction has waived them. The rule is just if the ouster or adverse possession is brought home to the knowledge of the owner, or is of such definite and hostile and public character, that such knowledge may be fairly presumed, but it is unjust and unreasonable if enforced without such limitation. (*Trustees, etc., Town of East Hampton* v. *Kirk*, 84 N.Y. 220.) The authorities plainly recognize the reason and justice of such requirement, and with some differences and variations, have as yet never drifted away from it. Originally an actual disseizin, a palpable turning out of the co-tenant, or hindering him from entry seems to have been requisite. (*Reading's Case*, 1 Salk. 392.) The modern rule is content with less, but is well stated in *Hawk* v. *Senseman* (6 Serg. & Rawle, 21), that to effect an ouster of the co-tenant there must be "an actual, continued, visible, notorious, distinct, and hostile possession." It must be such that knowledge of its existence is brought home to the co-tenant. (*Zeller's Lessee* v. *Eckert*, 4 How. [U. S.] 295; *Barr* v. *Gratz*, 4 Wheat. 213; *McClung* v. *Ross*, 5 id. 124; *Challefoux* v. *Ducharme*, 8 Wis. 287; *Long* v. *Mast*, 11 Penn. St. 189; *Bennet* v. *Bullock*, 35 id. 364; *Hall* v. *Stevens*, 9 Metc. 418.) It must make the intention to hold adversely manifest, and palpably display such intention. (*Marcy* v. *Marcy*, 6 Metc. 360; *Prescott* v. *Nevers*, 4 Mason, 330; *Hart* v. *Gregg*, 10 Watts, 185.) This uniform current of decision is not broken or diverted by the cases in our State. Wherever the acts needful to create an ouster have been stated, they have been an actual and exclusive possession of the whole premises, claiming the whole (*Florence* v. *Hopkins, supra*); taking title from a hostile source, and refusing to let in the co-tenant (*Clapp* v. *Bromagan, supra; Clark* v. *Crego*, 47 Barb. 617; *Phelan* v. *Kelly*, 25 Wend. 395); an exclusive possession, exclusive receipt of rents and profits, and exclusive claim of title (*Grim* v. *Dyar*, 3 Duer, 354); a public claim of the entire title, a notorious act, an open claim of exclusive right (*Smith* v. *Burtis*, 9 Johns. 174; *Jackson* v. *Brink*, 5

Cow. 483; *Jackson* v. *Tibbits,* 9 id. 241; *Miller* v. *Platt,* 5 Duer, 272); or where, upon demand of the co-tenant, his title is denied ánd possession is refused. (*Siglar* v. *Van Riper,* 10 Wend. 419.) It is impossible to mistáke this uniform direction of the cases.    If no explicit notice is given to the co-tenant of the denial of his right, the occupant must make his possession so visibly hostile and notorious, and so apparently exclusive and adverse, as to justify an inference of knowledge on the part of the tenant sought to be ousted, and of *laches* if he fails to discover and assert his rights.    (*Crary* v. *Goodman,* 22 N. Y. 175.)    No such adverse possession was proved in this case. The deed, by itself, was not necessarily hostile, and the possession under it was in no respect apparently changed.    We do not think a defense was established.

The judgment should be affirmed, with costs.
All concur.
Judgment affirmed.