(56 Misc. Rep. 378.)

### SCHENCK v. EGBERT et al.

(Supreme Court, Trial Term, New York County. November, 1907.)

TENANCY IN COMMON—ADVERSE POSSESSION.

The owner of certain land died intestate in 1828, leaving her husband tenant by the curtesy and two children, a son and daughter, tenants in common of the remainder. In 1845 the life tenant executed and delivered to the son two deeds of the entire premises. The last was not recorded until 1903. The son entered into possession and received the rents prior

to 1860. The life tenant died in 1866, and the son continued in possession and collected the rents until his death in 1901. Thereafter his heirs continued in possession. *Held*, that the possession of the son, commencing on the death of the life tenant, as a tenant in common, had ripened into adverse possession as against his sister or her heirs, and amounted to an ouster of his co-tenant, and made his possession solely that of a separate and hostile owner.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Tenancy in Common, §§ 42–52.]

Action by Edward F. Schenck against Ida Egbert and others. Judgment for defendant.

Eugene V. Daly, for plaintiff.
Alexander Thain, for defendants.

BRADY, J. The plaintiff sues in ejectment to recover the immediate possession of one undivided sixth part of or interest in the plot of land, with the buildings and improvements thereon, situate in the city and county of New York, known by the street number 224 Division street. The premises were formerly known as No. 248 Division street. The complaint alleges that the defendants claim title to and the right to possession of said premises adversely to the plaintiff, and that the defendants are in possession of and withhold the same from the plaintiff unlawfully and without plaintiff's consent, and demands judgment that he is seised in fee of an undivided one-sixth part of the premises, and that he recover possession thereof with the sum of $1,000 damages for the withholding possession thereof, together with the costs of this action. The defendant Egbert, in her answer, denies the rights and interests asserted by plaintiff, and by way of defense avers that for more than 20 years next before the commencement of this action she and her predecessors in interest were and have been in actual, physical, continued, and notorious possession of said premises, claiming title thereto in fee simple; the said claim being founded upon a written instrument conveying the title thereto in fee simple, exclusive of any other rights, etc. The action appeared regularly for trial in Trial Term, Part 11, of this court, on the 21st day of March, 1907, and after the submission of proof counsel for both sides stipulated upon the record in open court that the matter be submitted to the court for decision on the facts and on the law without a jury. Upon the admissions of counsel it appears that Mary Egbert died intestate in June, 1828, the owner in fee and in possession of the premises described·in the complaint, leaving her surviving Abraham Egbert, her husband, and their two children, viz., Abraham William Egbert, a son, and Eliza Jane Egbert, a daughter. The premises consisted of a lot of land, with buildings and improvements thereon. Said daughter, Eliza Jane Egbert, thereafter married Edmund Crocheron, and died intestate in August, 1842, leaving her surviving her husband, Edmund Crocheron, and their son, Abraham W. Crocheron, her only heir at law. Said son, Abraham W. Crocheron, died in October, 1842, an infant, intestate, leaving him surviving his father, said Edmund Crocheron. Said father, Edmund Crocheron, remarried, and by his second wife had three children, and died intestate in April, 1870, leaving him surviving his said three children—Frederick,

a son; Edmund, a son; and Carrie,· a daughter. His second wife, Ann Eliza Crocheron, died December 4, 1880. Said daughter, Carrie, married the plaintiff July 8, 1875, and died intestate June 18, 1879, leaving her surviving her husband, the plaintiff, and Harold C. Schenck, their son and only heir at law. Said son, Harold C. Schenck, died an infant, intestate July 26, 1879, leaving him surviving his father, the plaintiff, his only heir at law. Upon the death of Mary Egbert, therefore, her husband, Abraham Egbert, became entitled by the curtesy to a life estate in said premises, and subject to such life estate the fee descended to her said two children, Abraham William Egbert and Eliza Jane Egbert. The undivided one-half interest in remainder which descended to Eliza Jane Egbert (afterward Crocheron), unless conveyed by her in her lifetime, passed on her death to her son, Abraham W. Crocheron, and upon his death to his father, Edmund Crocheron, and upon the father's death (subject to the dower of the widow, Ann E. Crocheron, since deceased) to his three children, Edmund, Frederick, and Carrie, and the share of said Carrie therein, upon her death, passed to her son, Harold Schenck, and upon his death to his father, the plaintiff, who thus became seised of one equal undivided one-sixth of said premises.

Abraham Egbert, the husband of Mary Egbert, who, upon her death in 1828, became by curtesy a life tenant in the whole of said premises, died in 1866. Abraham William Egbert, his son, entered into possession of the whole of said premises prior to 1860, and remained in possession of the same up to the time of his death in 1902, and his title is now vested in the defendants. By deed dated July 14, 1845, recorded in the·office of the register of the county of New York, in Liber 466 of Conveyances, page 141, July 24, 1845, put in evidence by defendant, Abraham Egbert, the life tenant, together with Emeline, his second wife, granted, conveyed, and confirmed to Abraham William Egbert, his son, the premises in question. This is in form a bargain and sale deed, and expresses a consideration of one dollar. It describes·the premises conveyed as No. 248 Division street, the proper number at that time, but erroneously described the name of the owner of the land by which the same were bounded. The defendant further put in evidence a deed dated July 14, 1845, but not recorded until June 23, 1903, made by said Abraham Egbert and Emeline, his wife, to said Abraham William Egbert, which for the expressed consideration of $1 granted, bargained, and sold the premises in question by a correct description. Both these deeds purported to convey the entire premises. Just when the grantee entered into possession of the premises does not appear; but Stephen B. Brooker, a witness called by the defendant, testified that from a period prior to the year 1860 he had collected the entire rents of the premises and paid them over to Abraham W. Egbert, the grantee in said deeds, up to the time of his death in 1901, and thereafter to his son, Lincoln Egbert, for about a year, and thereafter to the defendant Ida Egbert. The life tenancy of Abraham Egbert ended with his death in 1866, and from that date down to the present time the defendant Egbert and her predecessors in interest have been in possession of the entire premises, collected the entire rents,

made leases to tenants from time to time, and have never accounted to the plaintiff for any part thereof, and as appears by the evidence the plaintiff never knew that he had a possible claim to the property until a short time before the commencement of the action in 1904. If the deeds aforesaid are sufficient paper title upon which to base a claim of title to the whole premises hostile and adverse to the rights of every other person, the possession of the defendant and her predecessors under them was quite sufficient to defeat the plaintiff's claim.

The plaintiff contends, however, that by the deeds aforesaid Abraham Egbert, who, so far as the record showed, owned only a life interest, granted only what he owned, and vested in his son, Abraham W. Egbert, who was a remainderman in an undivided one-half in fee, only the grantor's life interest, and that the continued possession of Abraham W. Egbert after his father's death was as remainderman in the said one-half, and that such possession was not of itself evidence of a claim of title adverse or hostile to the rights of his co-tenants. Summarizing the evidence appearing either by admission of counsel or by the testimony of witnesses, we have the following facts, to wit: That Mary Egbert died intestate, seised in fee of the entire premises, in the year 1828, leaving her husband, Abraham Egbert, tenant by the curtesy, and his two children, Abraham William Egbert and Eliza Jane Egbert, as equal tenants in common in the remainder in fee; that Abraham Egbert, the life tenant, executed and delivered in 1845 to the son, a remainderman, two bargain and sale deeds of the entire premises; that said Abraham W. Egbert entered into possession of the premises and received the rents prior to the year 1860; that the life tenant died in the year 1866, and said Abraham W. Egbert continued in possession of the premises and collected and retained the entire rents until his death in 1901, and that thereafter his heirs continued in such possession and received and retained the entire rents up to the present time; that in the meantime leases had been made at various times by the said Abraham W. Egbert, and about October, 1897, he leased the entire premises in conjunction with adjoining property for a period of 21 years, with right to renewal, and permitted the demolition of the old buildings and the erection of a substantial structure upon this site; that the interest claimed by the plaintiff is deduced from Eliza Jane Egbert, the daughter of Mary Egbert, and was vested at the time of the death of the life tenant in 1866 in Edward Crocheron; and that the interest claimed by the plaintiff became vested in him in 1879. There is no evidence in the case that any claim to an interest in the property was ever made by any person through whom the plaintiff claims his title, except that John Schreyer, a witness, testified that in 1897, when the lessee desired to procure from him a mortgage loan on the building about to be constructed, he told the witness that a man named Crocheron had told him that his wife had a claim in one of the lots, and that he (Crocheron) had gone to Mr. Egbert and wanted his wife's share, but he could not get any satisfaction. The witness stated that before he made the loan he consulted his lawyer, who advised him that as the claim was made over 30 years before that time it was outlawed, and it appears from

the evidence that plaintiff was unconscious of having any interest therein until a short time before the commencement of this action, or about the year 1904. Inasmuch as it appears that Abraham Egbert owned only a life interest at the time the deeds were given, and as the deeds were without covenants or warranty and were in proper and apt form for the purpose, it must be held that he conveyed by them to his son, Abraham W. Egbert, only his life estate, and, as the grantee's right to exclusive possession could not be questioned during the continuance of said life estate, such possession cannot be made a basis for a claim of adverse possession until the death of the life tenant in 1866.

The question now to be decided is whether the possession of Abraham W. Egbert, commencing then as a tenant in common and continued for the period and in the manner above stated, ripened into an adverse possession and amounted to an ouster of his co-tenants, and made his possession no longer theirs, but solely his as a separate and hostile owner. It is undoubtedly true that the possession of one tenant in common is ordinarily accepted to be consistent with the rights of his co-tenants; but it is likewise true that the plea of adverse possession is available to a tenant in common in a proper case against his co-tenants, the only difference being in the fact that stronger evidence is required to sustain the plea of a tenant in common than that of a stranger. I have made an exhaustive examination of the very numerous cases where the question of adverse possession was involved and decided, but have been unable to find a single case which can be said to be on all fours with the case at bar. In Culver v. Rhodes, 87 N. Y. 348, Finch, J., in an exhaustive opinion holding against the sufficiency of the plea in that case, says:

"We are thus led to consider the reason and justice of rule, which should measure the adverse possession necessary to effect the ouster of a co-tenant. Assuredly it should be one which requires notice in fact to the co-tenant, or unequivocal acts, so openly and public, that notice may be presumed of the assault upon his title, and the invasion of his rights. The adverse possession sets running a limitation, which in the end may operate as a bar. It does so only upon the theory that the party disseised has slept upon his rights, and by silence and inaction has waived them. The rule is just if the ouster or adverse possession is brought home to the knowledge of the owner, or is of such definite and hostile and public character that such knowledge may be fairly presumed; but it is unjust and unreasonable if enforced without such limitation. * * * If no explicit notice is given to the co-tenant of the denial of his right, the occupant must make his possession so visibly hostile and notorious, and so apparently exclusive and adverse, as to justify an inference of knowledge on the part of the tenant sought to be ousted, and of laches if he fails to discover and assert his rights."

An analysis of the various cases indicated that the possession must be unequivocal, and that the acts of the one in possession must be such as to apprise a co-tenant that his rights are invaded. Had the premises simply been occupied by Abraham W. Egbert himself, such occupation might be construed as an exercise of his own right simply, and not hostile to his co-tenant, as it might be contended that he had a right as a tenant in common to so occupy; but when it is considered that the premises were during the entire period rent-producing, and that the entire rents were received and appropriated by him ever since the death of the life tenant in the year 1866, can it be said that

such appropriation was not in hostility to all other claims, or that it did not constitute sufficient notice to the co-tenants that their rights were invaded, nor justify an inference of knowledge on the part of the tenants sought to be ousted and of laches if they failed to discover and assert their rights? When the life estate of Abraham Egbert ended in 1866, Edward Crocheron was entitled to take or demand possession of his interest or his share of the rents, and the statute then commenced to run. It does not appear that he was under any disability. At all events, in 1879, when plaintiff's interest accrued to him, he was of full age and under no disability. Exclusive possession of the premises and of the rents and profits thereof was maintained by the defendants and their predecessors continuously since 1866. The exclusive receipt of the rents and their retention was sufficient evidence of a declaration of a hostile holding by the one in possession, and, having continued for a period much longer than that required by the statute, the defendants are entitled to judgment.

Judgment for defendants accordingly.